247 So.2d 847 (1971)
258 La. 720
STATE of Louisiana
v.
Robert A. HARRIS.
No. 50872.
Supreme Court of Louisiana.
May 4, 1971.
*848 Ross T. Scaccia, New Orleans, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Justice.
This is a criminal prosecution for armed robbery. On the night of January 6, 1970, an armed man entered Breaux's Bar and robbed Hugh Bell, the bartender, of one hundred dollars. Bell contacted the police and gave them a description of the robber. After Bell closed the barroom, he saw the robber in another barroom. Upon seeing Bell, the man left immediately. Bell again summoned the police. One of the officers left briefly and returned with eight photographs. From the photographs, Bell and another witness to the robbery identified Robert Harris. The police arrested Harris the following morning.
Upon trial, the jury returned a verdict of guilty. The trial judge sentenced him to a term of ten years in the Louisiana State Penitentiary. The defendant has appealed, relying upon two Bills of Exceptions.

BILLS OF EXCEPTIONS NO. 1
The defendant reserved Bill of Exceptions No. 1 to the District Attorney's opening statement referring to the photographs obtained by the police officer for identification, the testimony of the victim, Hugh Bell, who stated that the police had shown him "some mug shots," and the testimony of Policeman James King, who testified that he secured pictures from "the B. of I. at Police Headquarters," referring to the Bureau of Identification.
The defense bases its objection upon the theory that the District Attorney's opening statement and the testimony placed evidence of defendant's bad character, or prior criminal record, before the jury, though the defendant neither testified in his own behalf nor placed his character at issue. The defense relies upon LSA-R.S. 15:481 and State v. Rives, 193 La. 186, 190 So. 374.
LSA-R.S. 15:481 provides:
"The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character."
The character referred to in the foregoing statute depends upon general reputation. LSA-R.S. 15:479. State v. Norphlis, 165 La. 893, 116 So. 374; State v. Emory, 151 La. 152, 91 So. 659; State v. Donelon, 45 La.Ann. 744, 12 So. 922. When the defendant has placed his character at issue, the State may rebut with testimony that his general reputation is bad. State v. Powell, 213 La. 811, 35 So.2d 741. But if the defendant does not place his character *849 at issue, no evidence of bad reputation is admissible. State v. Rives, 193 La. 186, 190 So. 374; State v. McBeth, 167 La. 324, 119 So. 65.
In the present case, the defendant did not testify in his own behalf, nor did he place his character at issue. The question presented, then, is whether or not the State introduced testimony of his bad character in violation of the statute.
Our examination of the District Attorney's opening statement discloses that the District Attorney made no reference to the source of the photographs. He merely outlined the circumstances under which the victim and another witness identified defendant Harris from eight photographs. The District Attorney instructed the police officers to abstain from any reference to a previous criminal record in their testimony.[1]
In a well-written Per Curiam, the trial judge states:
"The Court allowed a reference to the photograph because it constituted a part of the evidence in the casewhat actually transpired. It was an important link in the chain of evidence, without which there would have been a gap. It was the duty of the District Attorney to present all of the evidence which he had, particularly on as important an aspect as identification.
"If it was prejudicial to the defendant, it was so in the same sense that any evidence of the crime is. As an analogy, if the defendant's fingerprints were found on the scene, it certainly could not be held inadmissible because the defendant's previous prints were on file with the Bureau of Identification.
"Additionally, the Court was convinced of the good faith of the District Attorney. It was the only feasible way in which he could show the picture. A reading of the opening statement shows that the District Attorney avoided mentioning the source of the photograph. It need not necessarily have come from the Police Department Bureau of Identification.
"With reference to the testimony of Officer James King that he went to the Bureau of Identification and `obtained pictures of three colored males,' this constituted a gratuitous remarkunresponsive to the District Attorney's question in that the officer need not have stated the source of the picture, nor was he asked the source. The Supreme Court has decided that the State cannot be held responsible for the gratuitous remarks of a witness."
We agree with the trial judge. We doubt that the policeman's reference to obtaining the photographs at the Bureau of Identification amounts to the assertion of a prior criminal record.[2] If the reference is so construed, however, the testimony was purely gratuitous and unresponsive to the State's question.[3] Under these circumstances, *850 the testimony cannot be charged against the State.
Applicable here is the well-established rule that a criminal conviction is not vitiated by objectionable testimony volunteered by a witness, for which the State is not responsible. State v. Callihan, 257 La. 298, 242 So.2d 521; State v. Arena, 254 La. 358, 223 So.2d 832; State v. Donaldson, 238 La. 265, 115 So.2d 345.
We conclude that the Bill of Exceptions lacks merit.

BILL OF EXCEPTIONS NO. 2
In his closing argument, defense counsel undertook to argue to the jury the severity of the penalty for armed robbery, pointing out that the crime carried a maximum sentence of ninety-nine years imprisonment, without benefit of probation, parole or suspension of sentence. He also sought to inform the jury of the minimum mandatory sentence. Ultimately, the trial judge ruled that defense counsel could not argue the sentencing law to the jury.
In Bill of Exceptions No. 2, the defendant attacks this ruling.
The determination of the appropriate penalty and the imposition of sentence in non-capital cases are functions of the judge. The jury is concerned only with guilt.
Under Article 802 of the Louisiana Code of Criminal Procedure, the judge is required to charge the jury as to the law applicable to the case. Under Article 774, argument to the jury is restricted to the evidence admitted, to the lack of evidence, to conclusions of fact, and to the law applicable to the case.
We have held that sentence regulations in non-capital cases, such as those relating to mandatory terms, probation, or parole, are inappropriate subjects for the judge's charge to the jury. These matters are foreign to the jury's function of guilt determination and, consequently, form no part of "the law applicable to the case." See State v. Andrus, 250 La. 765, 199 So.2d 867; State v. Green, 244 La. 80, 150 So.2d 571.
In State v. Green, supra, we said:
"In this requested special charge defendant sought to have the jury charged what sentence could be imposed under the law in the event of conviction for violation of the Uniform Narcotic Drug Act, under which defendant was being tried, and also charged that a person so convicted was without the benefit of parole, probation, or suspension of sentence.
"Under the law of this state the judge is required to charge the jury all the law applicable to the accused's guilt or innocence of the crime charged, or any lesser crime included therein, in the light of the evidence adduced. It is the duty of the jury in such cases to determine the guilt or innocence of the accused, but in the event of conviction it is the duty of the judge, and not the jury, to impose sentence. The fixing of the punishment for conviction is solely within the province of the judge, and is no concern of the jury except in capital cases where the jury may return a verdict of `guilty without capital punishment' and preclude the judge from imposing the death sentence. Therefore this requested special charge was not pertinent, and was correctly refused."
By the same token, sentence regulations form no part of the applicable law to be argued by counsel before the jury. To allow argument of these matters would inject irrelevant considerations into the jury's deliberations as to guilt.
*851 The prevailing rule is that when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for argument to the jury. Abney v. State, 123 Miss. 546, 86 So. 341; 53 Am. Jur., Trial, § 467, p. 373. The supporting decisions from other jurisdictions are collated in the Annotation, Argument to Jury Law or Lawbooks, 67 A.L.R.2d 245, 294. These decisions are based upon the sound principle that legal matters irrevelant to guilt should not be pressed upon the jury.
We conclude that the ruling of the trial judge is correct.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs. He does not feel the trial court abused his discretion in failing to permit counsel to argue the severity of the sentence; however, for the reasons noted by the dissenting opinions he feels it preferable procedure to permit such argument and no abuse of discretion to do so.
DIXON, Justice (dissenting).
I must respectfully dissent from the majority holding as to Bill of Exceptions No. 2, in which we find no error in the trial judge's prohibition against the defense counsel's arguing to the jury the severity of the penalty for armed robbery.
The very section which defines the crime of armed robbery provides the sentence:
"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
"B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." R.S. 14:64.
In deciding that the defense counsel may not argue the sentence to the jury, the majority cites Abney v. State, 123 Miss. 546, 86 So. 341 (1920). There, the court held that the district attorney could not raise the suggestion of possible penalites in urging the jury to convict. Apparently, Mississippi denies both the prosecution and the defense the right to inform the jury about the sentence.
However, this court has held that there is nothing to prevent the district attorney informing the jury about pardons and paroles available to the accused in the event of his conviction. See State v. Burks, 196 La. 374, 199 So. 220.
There may be good reason for the double standard, but it can have little to do with a fair trial for the accused. Readily apparent is the damage that will be done to the basic notions underlying our jury system by the rule that the penalty for a crime can be kept secret from the jury. The jury system is cumbersome and inefficient. We maintain it in the United States because we consider it elemental and basic and essential to protection against tyranny. A large part of the value of the jury system is that a jury might refuse to enforce an oppressive law, even though it be proved that the defendant violated its provisions. The penalty is part of the law. The penalty alone might make a law oppressive.
The jury ought to know.
BARHAM, Justice (dissenting).
With full knowledge of the insecurity of my position and some degree of perturbation, I must state at the outset that I am not wholly in accord with the view that the penalty which may be imposed for a crime is not a matter which may be argued to a jury or even be subject to inclusion in the court's charge to the jury. Lawyers and judges play ostrich if they believe that juries do not attempt to return verdicts which accord with their understanding of the penalty which may be imposed after a consideration of whether they wish to act with mercy or with harshness. Penalties are the subject of discussion in the jury *852 room in almost every case. Some of the jury may actually know the penalties which go with the responsive verdicts, others may be in total ignorance, and still others have erroneous conceptions of the penalty. If we but acknowledge that penalties are considered by the jury in rendering verdicts, then it seems we must acknowledge that it would be better that the jury be correctly informed. The question then addressed to a court of law is whether or not our Constitution or other law prohibits a jury's being informed of the penalty or penalties which accompany the possible verdicts they consider.
Article 19, Section 9, of our Constitution says in part: "* * * The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge." (Emphasis here and elsewhere has been supplied.) Under this constitutional provision we have seen fit in capital cases to allow the jury to fix the penalty as well as decide guilt or innocence. They are assigned this responsibility and given the applicable penal law by the court in its charge. There is, then, no constitutional prohibition against informing a jury of the penalty or against the jury's imposing the sentence. See McGautha v. California, 402 U.S. ___, 91 S.Ct. 1454, 28 L.Ed.2d 711 (decided May 3, 1971).
A crime is defined as an offense against the State in violation of penal law. It is the penalty or penalties which make a law criminal. It cannot be said that the penalty is not an essential part of the law under which one is charged with a crime. Code of Criminal Procedure Article 774 defining the scope of argument includes argument on "the law applicable to the case". In addition to the constitutional requirement that the judge charge the jury as to the law, Code of Criminal Procedure Articles 802-808 amplify the constitutional provision by specifying some particular matters which must be charged and prohibiting the judge from charging or commenting upon the facts. I find no constitutional or statutory prohibition against arguing to the jury or even charging the jury as to the penalty which makes the law criminal. If my premise is correct that juries do in fact consider penalties in arriving at verdict, it would appear to be good law that the jury be correctly informed of the penalty. I am of the opinion that our law permits the jury to be correctly informed as to the penalty part of the law applicable to the case.
However, the case at hand is to be resolved only on a question of whether argument should be permitted before a jury when the offense charged carries a minimum sentence without benefit of probation, parole, or suspension which must be imposed in the event of a verdict of guilty.
Bill of Exception No. 2 was reserved by defense counsel when the trial judge refused to allow him to argue to the jury concerning the mandatory sentence for armed robbery. The verdict of guilty to that charge automatically imposes at least five years' imprisonment without benefit of probation, parole, or suspension of that sentence. Where the judge is automatically bound to impose a sentence certain at least in minimum and cannot suspend that sentence or place the defendant upon probation, it appears to me that the jury not only has determined the guilt of the defendant but has, at least to the degree of the minimum sentence, imposed that sentence upon the defendant. In this case the jury verdict of guilty automatically carried at least five years at hard labor. The court could only increase that sentence.
It then appears to me that, as in capital cases, the defendant is entitled to argue to the jury that they are not only determining the guilt or innocence of this accused but are fixing the sentence. I acknowledge the correctness of the majority's statement: "The prevailing rule is that when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for argument to the jury. * * *" However, I have pointed out here that the *853 penalty to be imposed upon the accused in this case is not the responsibility of the judge alone but is shared by the jury, and that the jury verdict in and of itself imposed a sentence of at least five years at hard labor which the trial court could not reduce or suspend. Sentence, then, in this case is a joint responsibility of judge and jury, and the jury is entitled to know the heavy burden under which it acts. The defendant's counsel is entitled to argue the law which the jury will apply to the case.
With full knowledge that the overwhelming majority view is that the jury is not to be concerned with the sentence or sentences which can be imposed under their verdicts, I believe that view has been reached without a consideration of the actualities and realities of jury determinations. Nevertheless, even in the face of this prevailing general view, the case at hand is certainly an exception to the general rule.
I respectfully dissent.
NOTES
[1] The District Attorney informed the court of the instruction after objection was made to his opening statement. Tr. 39-40.
[2] The cases from other jurisdictions cited by defendant are inapposite. In Alberty v. State (Okl.Cr.App.) 97 P.2d 904, the prosecuting attorney was allowed to offer the Chief of Police's testimony that he obtained a photograph of defendant from the State Penitentiary and that the complaining witness identified the photograph from a large number of photographs. The evidence was held to be inadmissible hearsay. The court also construed the testimony as an attempt by the prosecutor to show that defendant had served a sentence in the penitentiary. In Riley v. State, 74 Okl.Cr. 363, 126 P.2d 284, an armed robbery prosecution, the trial judge sustained defense objections to the prosecuting attorney's question to the complaining witness to this effect: Did you identify pictures of suspects in the sheriff's office prior to the time defendants were arrested? The defendant saved no exception to the interrogation. The Oklahoma Criminal Court of Appeals affirmed the conviction.
[3] The State's question to the policeman was: "Now, what did you do after you received information from them?" As phrased, the question called for no location of the source of the photographs. The officer also had been previously instructed to avoid any reference to a criminal record.