455 So.2d 1244 (1984)
STATE of Louisiana
v.
Lidio P. CALZADILLA.
No. KA 1666.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1984.
*1246 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Criminal Div., Harry F. Connick, Dist. Atty., Beryl M. McSmith, Asst. Dist. Atty., Alison Gosselin, Law Student, New Orleans, for plaintiff-appellee.
Calvin Johnson and Ramon Abadin, Supervising Attys., Teri-Ann Gross, Student Practitioner, New Orleans, for defendant-appellant.
Before GARRISON and WARD, JJ., and L. JULIAN SAMUEL, J. Pro Tem.
GARRISON, Judge.
The defendant, Lidio Calzadilla, was charged by bill of information with armed robbery in violation of La.R.S. 14:64 and with attempted murder in violation of La. R.S. 14:27 and 14:30. The jury found the defendant guilty as charged. The trial judge gave the defendant the maximum sentence for armed robbery of ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. For the attempted murder conviction, the defendant was given the maximum sentence of fifty years at hard labor. The trial judge also specified that these sentences are to be served consecutively. Defendant appeals his conviction and sentence.
The facts of this case are as follows: On November 5, 1982 at approximately 1:00 a.m., Paulino Lopez was escorting one of his employees, Maria Christina Ruvio, to her home on Abundance Street in New Orleans. As they approached Ms. Ruvio's front porch, two men suddenly appeared and began shooting at Ruvio and Lopez. One of the men shot Lopez four times before Lopez fell to the ground. This assailant then stood over Lopez and shot him one more time. Following the shooting, the assailant retrieved Lopez's wallet and fled with his co-assailant. Lopez suffered serious injuries but survived the attack.
Lopez gave the police a detailed description of his assailant. An anonymous informant gave the police a tip that the defendant was the person who shot Paulino Lopez. Officer Randy Adams of the New Orleans Police Department was familiar with the defendant and noted that the description given to police by Lopez matched the defendant's description. Officer Adams then included a picture of the defendant from his files in a group of photographs of similar looking men to be used in a photographic lineup. This photograph of Calzadilla was a regular small photograph and was not a mug shot. Several days after the incident, Lopez selected the defendant's picture from the photographic lineup and told police that the defendant was his assailant. He also identified the defendant at trial saying that he was "100% sure" of his identification. Lopez added that he had seen the defendant several times previously around his restaurant. Ms. Ruvio was unable to make an identification of the assailants from the photographic lineup. The other assailant in this case has not been apprehended.
The defendant claimed that he had never seen Lopez before these proceedings and that he did not commit the armed robbery and attempted murder of Paulino Lopez. *1247 He did testify at trial, however, that he had reason to believe that his acquaintances, Juan Casere and Mario Pedro Vego, were the perpetrators of this crime.
A review of the record reveals that there are no errors patent.
Although not alleged as an assignment of error, the sufficiency of the evidence in this case must be reviewed in accordance with State v. Raymo, 419 So.2d 858 (La.1982). According to the case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a conviction must be based on proof sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find that the essential elements of the crime charged have been proven beyond a reasonable doubt. In this case, the defendant was charged with armed robbery[1] and attempted[2] murder[3]. Evidence was presented at trial which showed that the defendant shot Paulino Lopez five times. He and his co-assailant then robbed Lopez of his wallet and fled the scene. Lopez identified the defendant as his assailant at trial and in a pre-trial photographic lineup.
The evidence indicates that the defendant's intent was to kill or to inflict great bodily harm upon his victim. Both Lopez and Ms. Ruvio were present and conscious during the armed robbery and attempted murder and their eyewitness testimony provides sufficient evidence in the record to support the jury's guilty verdict.
Defendant urges three assignments of error on appeal. In his first assignment of error, the defendant claims that the trial court erred in denying his motion for a physical lineup. At the photographic lineup conducted for Paulino Lopez, Lopez identified the defendant as his assailant stating that he was "almost sure but would like to see the man in person." Pursuant to this request, the defense filed a pre-trial motion requesting a physical lineup. The trial judge denied this motion. At trial, Lopez testified that the defendant was definitely the person who robbed and shot him in the early morning of November 5, 1982.
In the case of State v. Boettcher, 338 So.2d 1356 (La.1976), the Louisiana Supreme Court held:
"... we conclude that an accused has no constitutional or legal right to order a lineup. However, we likewise conclude that a district court has broad discretion to order one or not, in the interests of the fairness of the identification of the defendant, upon proper showing of an exceptional nature that otherwise the trial testimony as to his visual identification (if a material issue) may not be reliable."
To determine if an exceptional nature exists which would warrant the necessity of a physical lineup, the five factor reliability test of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), should be implemented. These factors include:
(1) the opportunity to view
(2) the degree of attention
(3) the accuracy of the description
(4) the witness' level of certainty
(5) the time between the crime and the confrontation *1248 Testimony in this case indicated that the defendant stood only three feet away from Lopez as he fired the shots and only fifteen inches away as the two men searched Lopez. A streetlight located twenty feet away from the defendant was shining directly in his face during the entire incident. Lopez testified that he concentrated totally on his assailant and because of this, he could not give the police a detailed description of the other assailant. Lopez's description of his assailant was so detailed that Officer Adams noted that this description matched a picture of the defendant which he already had in his possession. After being shown at least fourteen photographs of similar looking men, Lopez was able to select the defendant's photograph in only a couple of minutes. This photographic lineup took place ten days after the date of the crime.
These factors certainly seem to indicate Lopez's ability to make an accurate identification which is crucial to this case. Because there is not a substantial likelihood of misidentification in this case and because the defendant did not prove the existence of an "exceptional nature" which mandated the ordering of a physical lineup, the trial judge acted within his discretion in denying defendant's motion for a physical lineup. This assignment of error is without merit.
In his second assignment of error, the defendant contends that the trial court erred in denying his motion for mistrial. The defense moved for a mistrial based on remarks made by an investigating officer at trial and on certain photographs which were offered into evidence at trial. In both instances, the defendant claims that attempts were made to show his bad character and that a mistrial was warranted because the defendant had not placed his character in issue. The defendant also contends that the introduction of these photographs prejudiced his right to a fair trial.
During his testimony, Officer Adams stated that he knew the defendant from a previous case. He also stated when viewing photographs of some other men (not the defendant) that he recognized one of the other men as a "murder suspect" from another case which he had handled. These photographs depicted other men (not the defendant) festively displaying guns. They were seized from an apartment on North Rampart Street pursuant to an anonymous tip received in connection with this case.[4] (The defendant did not reside at this apartment). The defense claims that this evidence was used by the State to show system or intent and that, therefore, the State should have filed notice of its intention to use evidence for this purpose. Alternatively, the defense contends that these pictures are irrelevant and were introduced as evidence of the defendant's bad character when this issue was not properly before the court.
Officer Adams' remark that he knew the defendant from another case did not amount to an assertion of a prior criminal record of the defendant. As noted by the trial judge, this remark could have also been interpreted to mean that the defendant was a suspect, witness or victim of another crime. If the remark was interpreted by others as an indication of a prior criminal record, a mistrial was still unwarranted in light of the fact that the testimony was purely gratuitous and unresponsive to the State's question which merely directed Officer Adams to describe the details of his investigation which led to the arrest of the defendant in this case. State v. Harris, 258 La. 720, 247 So.2d 847 (1971). Adams' remark that he recognized one of the other men as a murder suspect from a prior case was completely irrelevant and immaterial to this case as well as being unresponsive to the State's question. A contemperaneous objection to this remark could have cured any possible prejudice alleged by the defendant. However, no *1249 objection was made as to this remark until the defense moved for a mistrial after the State had rested its case. Furthermore, the motion for mistrial was properly denied because a police officer is not an officer of the court; therefore, improper remarks made by a police officer do not fall within the ambit of the mandatory mistrial article, C.Cr.P. Art. 770.
In addition to the allegedly prejudicial remarks by Officer Adams, the defendant also based his motion for mistrial on the introduction into evidence of photographs seized in this case which depicted acquaintances of the defendant displaying weapons in a "joyous" mood. The trial judge denied the motion noting that the defendant did not appear in this group of pictures. The trial judge also commented that the holding of a gun is not necessarily indicative of criminal activity.
On appeal, the defense also contends that it was error for the trial court to later allow another set of photographs to be introduced into evidence which depicted the defendant standing with the same men who were displaying guns in the other set of photographs. These photographs were seized from the defendant's room at the YMCA and featured the defendant and the other men in friendly poses. However, the defendant did not move for a mistrial when this second group of photographs was introduced; therefore, he is precluded from asserting his right to a mistrial on appeal. State v. Morgan, 367 So.2d 779 (La.1979). The defense also did not argue that the admission of this second set of photographs was error on appeal.
It should be noted that from these two sets of pictures, the defendant identified two of his acquaintances who he claimed were the perpetrators of the robbery and shooting of Paulino Lopez. The State argued that these sets of photographs are relevant to prove the reliability and accuracy of the police informant.
We find that both sets of photographs are completely immaterial to this case and that the trial judge erred in allowing their introduction as evidence. However, this was harmless error because these photographs did not have a prejudicial effect on the defendant. Photographs of people other than the defendant displaying guns cannot be considered prejudicial to the defendant who did not even reside at the address from which the photographs were seized. If anything, the introduction of these photographs resulted in the confusion of the jury rather than prejudice to the defendant. This assignment of error is without merit.
In his third and final assignment of error, the defendant contends that the trial court imposed an excessive sentence and did not particularize the punishment to the defendant as required by La.C.Cr.P. Art. 894.1. The defendant was given the maximum sentences allowable for his convictions of armed robbery and attempted murder. Additionally, the trial judge stipulated that these sentences will be served consecutively.
Maximum sentences are ordinarily reserved for the most egregious and blameworthy offenders in a class. State v. Telsee, 425 So.2d 1251 (La.1983). In the sentencing hearing in this case, the trial judge noted that the defendant shot his victim four times at close range. When his victim had fallen to the ground, the defendant shot him again. After this brutal shooting, the defendant and his cohort robbed Mr. Lopez of his wallet containing approximately $200.00. During this incident, the two assailants fired numerous other shots in the area which, fortunately, did not hit anyone. Paulino Lopez suffered serious and extensive injuries but somehow survived. The brutal manner in which these crimes were committed certainly warrants the imposition of maximum sentences. As the trial judge noted, the defendant's actions indicate that it was his intent to kill or to inflict great bodily harm upon his victim. Furthermore, Code of Criminal Procedure Article 883 authorizes the imposition of consecutive sentences if the trial judge expressly makes this stipulation at the time of sentencing. This specification *1250 by the trial judge was clearly made as reflected in the transcript of the sentencing hearing.
The defense argues that the trial judge improperly referred to the photographs discussed in Assignment # 2 in which the defendant is pictured with men who were pictured in other photographs displaying weapons in a "joyous" mood. The defense urges that this reference implied to the jury that the defendant was of bad character when this issue was not properly before the court. However, C.Cr.P. Art. 894.1 subd. B(9) specifically allows the trial judge to consider the character and attitudes of the defendant in imposing a sentence. Additionally, the transcript of the sentencing hearing indicates that in sentencing the defendant, the trial judge relied mainly on the vicious manner in which these crimes were committed.
As for defendant's argument that the trial judge did not comply with the requirements of C.Cr.P. Art. 894.1 in particularizing the sentence to the offense and the offender, a reading of the transcript of the sentencing hearing indicates otherwise. The trial judge carefully complied with the guidelines of this article in sentencing the defendant. This assignment of error is without merit.
Finding no reversible error in the record before us, we affirm the conviction and sentence of the defendant.
AFFIRMED.
NOTES
[1] La.R.S. 14:64 reads in part:

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
[2] La.R.S. 14:27 reads in part:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
[3] La.R.S. 14:30 reads in part:

First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery.
[4] A gun was also seized from this North Rampart Street address. Pellets taken from Ms. Ruvio's porch were tested and were proven to be fired from this gun. However, the pellets recovered from Mr. Lopez's body were not fired from this same gun, according to expert testimony.