519 So.2d 188 (1987)
STATE of Louisiana
v.
Willie CHEATHAM.
No. KA-7675.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1987.
Writ Denied April 22, 1988.
*189 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Patricia Edwards, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, LOBRANO and CADE, JJ.
CIACCIO, Judge.
Defendant, Willie Cheatham was charged with the second degree murder of his father, Oscar Cheatham. He was found mentally competent to stand trial in June, 1986, after having been formerly committed to the Feliciana Forensic Facility in October, 1985. The defendant waived his right to a jury trial. He was convicted of the charged offense and ordered to serve life imprisonment at hard labor, without benefit of parole. The defendant appeals his conviction relying upon six assignments of error (of which 5 are filed pro se). We affirm the defendant's conviction and sentence.
The record reveals the following facts:
On August 8, 1985, in the early morning hours, the defendant called his father by telephone asking to borrow money. When his father responded affirmatively, Cheatham rode a bus from a bar in the French Quarter to his father's house at 1732 Hendee Street in New Orleans. When he arrived, the men began arguing about the defendant's habit of borrowing money and about his girlfriend, whom the elder Cheatham called a "slut" and a "whore." Father Cheatham then went into his bedroom while the defendant sat in the kitchen. Several minutes later, the defendant took a knife from the kitchen and proceeded into his father's bedroom, where he stabbed his father sixty-eight times with two different knives. Also, at some point, the defendant *190 hit his father with a glass vase, fracturing his skull. The defendant took $78.00 from his father before taking a taxi back to the bar where his girlfriend was waiting.
Following an investigation of this incident, Detective Marco Demma learned that the victim's son lived on Airline Highway. Detective Demma went to the suspect's residence. He was met by Ms. Jackie Johnson, the suspect's girlfriend and a co-tenant of the apartment. In an interview with Detective Demma, Ms. Johnson advised that she had seen her boyfriend on the prior evening. She stated that he had a cut on his hand and his clothes were bloodied. She thereafter directed the police to the bloodied clothes and a towel.
Ms. Johnson was transported to the police station for questioning. A short time later, Willie Cheatham arrived at the police station looking for his girlfriend. Detective Demma advised the suspect that he was under arrest for his father's murder. Detective Demma advised Willie Cheatham of his constitutional rights. Cheatham thereafter gave a statement confessing to the crime.
In his first assignment of error, the defendant contends that the evidence presented does not support a verdict of second degree murder but rather only a verdict of manslaughter.
He reasons that his actions resulted from provocation in that he was under a great deal of stress at the time. He was in the humiliating position of having to borrow money. Additionally, he was subjected to listening to his father insult his girlfriend by calling her a "whore" and a "slut." Although, he received the money he requested, it was begrudgingly thrown in his face. This incident angered the defendant. Therefore, he contends that although this was an intentional killing, it was committed in sudden passion or heat of blood.
The defendant was charged with and convicted of second degree murder. Second degree murder is defined as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; ..." La.R.S. 14:30.1.
Manslaughter is murder which would be in the first or second degree but the offense "is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control or cool reflection." (Emphasis Supplied) La.R.S. 14:31. If the blood has cooled or an average person's blood would have cooled at the time the offense was committed, the murder which results is homicide and not manslaughter. La.R.S. 14:31. The theory of provocation was discussed by the Louisiana Supreme Court in State v. Lombard, 486 So.2d 106 at 111 (La., 1986) wherein they stated:
(i)n reviewing defendant's claim, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence.
In this case the trial judge considered the possible verdicts of manslaughter and/or homicide and he concluded that the facts supported his finding of a conviction for second degree murder. He presented the following reasons for his conclusion:
There is no doubt in this Court's mind that the defendant committed the offense and that he was motivated or actuated by any specific intent, if not to kill, certainly to inflict serious and great bodily harm. As we talked about yesterday in discussion with counsel through closing arguments, the question that this Court has to decide as the trier of fact is whether the defendant was so provoked into performing these dasterdly deeds as to reduce the killing from second degree murder to manslaughter. The Court has read the statute as to second degree murder and as to manslaughter as well as the notes and comments that the redactor have offered us in our code.... The provocation that's been offered to reduce this murder to manslaughter is that the victim in this case, the defendant's father, defamed the defendant the defendant's paramour calling her prostitute and slut, among other things, also indicating to the defendant that he *191 should have nothing to do with her, that he should separate from her and that probably she was using up his money. While the statement does not contain these allegations, the defendant's testimony on the witness stand indicated this occurred. Whether it did or not, the Court is not convinced beyond a reasonable doubt. However, even if it did occur, the question becomes whether those words, those statements are adequate provocation that would stir the passion and resentment of a reasonable person, one of ordinary self-control, or the passion of this so called average person. In this situation, the Court finds that the defendant permitted his impulse and passion to obscure his judgment, and he is therefore fully responsible for the consequences of his act. This Court finds that these statements are not adequate provocation that should cause an ordinary person to lose their cool reflection and to act in this utterly impulsive fashion.

* * * * * *
We agree with this conclusion and the reasons stated by the trial judge. The actions by the victim on the night in question were not such that they would have so provoked an average person as to cause him to be deprived of his self control or cool reflection.
Furthermore, even assuming arguendo that this victim's actions were provocative, our review of the record indicates that between the time of this incident and the actual murder there was a sufficient "cooling" period such that an average person should have regained his cool reflection.
For these reasons we find that the trial judge correctly returned a verdict of second degree murder in this case. Accordingly this assignment lacks merit.
In his first pro se assignment of error, Cheatham argues that his trial counsel was inefficient because he waived his right to present an opening statement.
Defense counsel is not obligated to make an opening statement. La.C.Cr.P. Art. 765. In order to claim that the failure of trial counsel to make an opening statement resulted in ineffective assistance of counsel the defendant must make a showing of specific prejudice. In this case there has been no such showing and as such this claim must fail. For these reasons, this assignment of error is without merit.
In his second pro se assignment of error, the defendant contends that the seizure of evidence from his apartment was unconstitutional.
All warrantless searches are unreasonable unless shown to fall within one of the well established exceptions to the rule that a search must rest upon a valid warrant. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Consent to search is a valid exception to the search warrant rule. See: Schenckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be searched. State v. Bodley, 394 So.2d 584 (La., 1981). This common authority arises from "the mutual use of the property by persons generally having a joint access or control for most purposes so that it is reasonable to recognize that any of the coinhabitants has a right to permit the inspection in his right and that the others have assumed the risk that one of their number might permit the common area to be searched." U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Consent is a question of fact which involves the credibility of witnesses and a determination by the trial judge is accorded great weight. State v. Yarbrough, 418 So.2d 503 (La., 1982).
In this case Detective Demma stated that Ms. Johnson admitted him into the apartment which she cohabited with the defendant. She thereafter gave the detective permission to search and seize the clothing and towel. As such, the consent to search was freely and voluntarily given by one who had control over the premises. Accordingly, this constitutes an exception to the rule that a warrantless search is unreasonable. The search and subsequent seizure *192 of the evidence is valid. Accordingly this assignment of error is meritless.
In the third pro se assignment of error, the defendant contends that his arrest was illegal.
In order for an arrest to be valid there must exist probable cause to believe that a particular person has in fact committed the crime. La.C.Cr.P. Art. 213. State v. Trahan, 481 So.2d 729 (La.App., 1st Cir.1985).
Through his investigation, Detective Demma discovered that the defendant was with the victim the night he was murdered. Following the meeting with his father the defendant reportedly returned home wearing bloodied clothes and suffering from a cut on his hand. The bloodied clothes of the defendant were discovered in a search of his residence. Under these circumstances the policemen had probable cause to arrest the defendant for the commission of this crime. Accordingly, this arrest was legal and this assignment of error lacks merit.
In his fourth pro se assignment of error the defendant argues that his confession was illegally obtained.
The record indicates that at the time of his arrest Officer Demma advised the defendant of his arrest for the killing of his father. He thereafter informed the defendant of his Miranda rights. It was only after being fully apprised of his rights that the defendant entered a confession to the crime. Under these circumstances, the confession was free and voluntary. This assignment lacks merit.
In his final pro se assignment of error the defendant alleges that he did not make a knowing waiver of his right to a trial by jury. The minute entry reflects that "The court explained defendant's right to a trial by jury or judge and the defendant in proper person waived a trial by jury and elected to be tried by the court." Thus, we find that the record evidences a knowing and intelligent waiver of his right to a trial by jury. See: State v. Legnon, 464 So.2d 910 (La.App., 4th Cir., 1985).
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.