527 So.2d 398 (1988)
STATE of Louisiana
v.
Glen LIVAS.
No. KA 7611.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
*399 M. Craig Colwart, Orleans Indigent Defender Pro., New Orleans, for appellant.
Harry F. Connick, Dist. Atty., R. Jeffrey Bridger, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Defendant, Glen Livas was charged with the second degree murder of Charles Shelley, Jr. and a twelve man jury found him guilty as charged. La.R.S. 14:30.1. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Livas appeals this case relying upon two assignments of error. We affirm the defendant's conviction and sentence.
On August 28, 1985 at approximately 12:30 p.m., New Orleans Police Officer Norman Taylor was called to the vicinity of South Miro Street and Martin Luther King Boulevard in New Orleans to investigate an apparent shooting. Upon his arrival Officer Taylor discovered the victim, Charles Shelley, Jr. lying on the ground and suffering from gunshot wounds of the head and chest. Officer Taylor administered first aid to the victim and he was thereafter transported to the hospital where he died. An autopsy revealed that Shelley died of the gunshot wound to the head. A toxicology report evidenced the presence of the drug P.C.P. in the victim's blood.
An investigation of this incident revealed the following facts:
On the date in question, the victim, Charles Shelley, Jr., Anthony Williams and Anthony's brother, Robert Williams, were proceeding on foot towards South Prieur Street. As they reached the vicinity of South Miro Street and Martin Luther King Boulevard they were approached by the defendant, Glen Livas. Livas asked Shelley if he knew who had taken Livas' medallion and Shelley answered that the person lived in the St. Thomas Housing Project. The defendant removed a gun from his *400 shirt and shot Shelley once in the head. As Shelley lay wounded on the ground Livas fired his gun a second time striking the victim in the right arm and chest.
In addition to the victim's companions, who saw the events that night, Ms. Ollie Moore, who was playing cards on her porch across the street from the shooting, was an eye witness. These persons each positively identified the defendant as the perpetrator of this offense after they had chosen his photograph from a photographic display presented to them by the New Orleans Police Department. According to these witnesses the victim was not armed, and did not threaten nor attack the defendant.
At trial, Robert Reid, Dannell Hickerson and Janice Livas Barnes testified for the defense, at which time they each alleged that they had been present during the shooting.
Robert Reid testified that although he did not see the shooting, he saw Robert Williams, who allegedly had a drug connection to the victim, remove money from the victim's pocket as the victim lay on the ground. Apparently, earlier in the evening, Reid had observed Jerry Ward steal the victim's medallion at gun point. Ms. Barnes testified that she witnessed the defendant and the victim argue before the defendant shot the victim. She stated that the defendant was very angry but that he did not shoot the victim as the victim lay on the ground. Hickerson's testimony was consistent with that of Ms. Barnes.
In his first assignment of error, defendant argues that the reference to the defendant's "B of I" photographs was a reference to other crimes evidence which was inadmissible. He further contends that it was error for the trial court to refuse to grant a mistrial on the basis of objectionable evidence.
A mistrial shall be granted, upon the motion of the defendant, when a remark or comment is made within the hearing of the jury, during trial or argument, which refers directly or indirectly to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." La.C. Cr.P. Art. 770(2).
In the Louisiana Supreme Court decision in State v. Harris, 258 La. 720, 247 So.2d 847 (1971) a policeman testified that he went to the B of I at Police Headquarters and obtained photographs. The District Attorney also made reference to this fact during his opening statement. In refusing to find that these assertions constituted reversible error, the Louisiana Supreme Court in Harris, supra 247 So.2d at 849, stated:
"We doubt that the policeman's reference to obtaining the photographs at the Bureau of Identification amounts to the assertion of a prior criminal record."
In the current case, the characterization of the photographs was even more oblique than in Harris, supra as in this case there was no indication that the photographs were from "Police Headquarters." There is a great probability the jurors were not aware that "B of I" meant the Bureau of Investigation or that the photographs were secured following the defendant's involvement in another criminal act. For this reason we find the trial judge did not commit error when he allowed these statements into evidence. Likewise he did not err in refusing the defendant's request for a mistrial on the basis of these statements.
Accordingly, this assignment lacks merit.
The defendant's second assignment of error alleges that the jury erred in finding him guilty of second degree murder in that the evidence was not sufficient to support such a verdict. In particular, Livas argues that although the killing of Shelley was intentional, it was committed in sudden passion or heat of blood and as such would only support a verdict of manslaughter.
In State v. Cheatham, 519 So.2d 188 (La.App., 4th Cir., 1987) this court addressed a similar argument raised by a defendant who had been convicted of second degree murder. In Cheatham, supra at 190, we stated the following:
The defendant was charged with and convicted of second degree murder. Second degree murder is defined as "the *401 killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; ..." La.R.S. 14:30.1.
Manslaughter is murder which would be in the first or second degree but the offense "is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control or cool reflection." (Emphasis Supplied) La.R. S. 14:31. If the blood has cooled or an average person's blood would have cooled at the time the offense was committed, the murder which results is homicide and not manslaughter. La.R.S. 14:31. The theory of provocation was discussed by the Louisiana Supreme Court in State v. Lombard, 486 So.2d 106 at 111 (La., 1986) wherein they stated:
(i)n reviewing defendant's claim, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence.
In this case there was no physical altercation and the defendant was not threatened in any way. The victim and defendant exchanged words and the defendant was described as "angry", apparently because someone had stolen his medallion earlier in the evening.
As such, we find that the actions of the victim on the night in question were not such that they would have so provoked an average person causing him to be deprived of his self control or cool reflection.
For these reasons we conclude that the jury correctly returned a verdict of second degree murder in this case. This assignment of error is without merit.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.