694 So.2d 1082 (1997)
STATE of Louisiana
v.
Darrell HUMPHREY.
No. 96-KA-838.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 1997.
*1083 Laurie A. White, New Orleans, for Appellant Darrell Humphrey.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Research and Appeals, Gretna, for Appellee State.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Darrell Humphrey, appeals from a jury conviction of manslaughter and sentenced to life imprisonment at hard labor as a fourth felony offender. For the reasons which follow, we affirm the conviction, vacate the habitual offender adjudication and sentence and remand.
On May 5, 1995, Schwann Jackson had recently ended a relationship with defendant and was living with her aunt, Juanita Adams. At approximately 8:30 p.m. Schwann Jackson, Juanita Adams and her daughter, Wanda Adams, were sitting on the sofa inside the Adams' residence at 1405 Claiborne Drive in Jefferson, Louisiana. Defendant entered the residence through the kitchen door and asked to speak with Schwann Jackson. She eventually agreed to speak with defendant and they went into one of the bedrooms.
From this point, there are contradictory accounts of what happened next. According to Juanita and Wanda Adams, from Juanita's position on the sofa, she was able to see inside the bedroom. Juanita Adams observed defendant push Schwann Jackson onto the bed and she told defendant to leave her residence. After defendant and Schwann Jackson exited the bedroom, defendant informed Juanita Adams that Schwann Jackson would be leaving with him. However, Schwann Jackson refused to leave with him. Upon entering the kitchen, defendant grabbed a knife from the table and Juanita Adams picked up a hammer. Juanita Adams told defendant to "put the knife back on the table," but he refused. At that time Wanda Adams and Schwann Jackson were both in the kitchen and Wanda Adams was standing in front of Schwann Jackson. When Wanda Adams "stooped down," defendant stabbed Schwann Jackson in the chest, mortally wounding her. Defendant then fled the residence with the knife and said that the next time he would kill Schwann Jackson.
Defendant gave a different account of the nights' events in his statement to the police. He stated that he was upset with Juanita Adams, because earlier she had sent Schwann Jackson to obtain crack cocaine for her. When defendant expressed his objections, Juanita Adams told him to leave. Defendant wanted Schwann Jackson to accompany him, but Juanita Adams stated that Schwann Jackson was not going anywhere. *1084 Defendant grabbed Schwann Jackson by the arm and began pulling her toward the kitchen door. Juanita Adams grabbed a knife and approached defendant. He was able to take the knife away from her. A struggle then ensued between him, Schwann Jackson, Juanita Adams and Wanda Adams, during which everyone "fell down in a pile." It was then that Schwann Jackson was stabbed. Defendant then stated:
I didn't see anybody stab her. I can't remember stabbing her myself. If I was to say I stabbed her I would be, you know, I would be saying what I really don't know. It, it's possible that I could have accidentally stabbed her but I was going down (inaudible) I was trying to protect myself. When I was going down like that(,) them, the weapons, the weapon that I had I took from the auntie.
In a grand jury indictment filed on May 26, 1995, defendant was charged with second degree murder, in violation of La. R.S. 14:30.1. When arraigned on June 28, 1995, he entered a plea of not guilty. On November 2, 1995, the trial court conducted a hearing on defendant's motion to suppress and denied the motion. On February 26, 1996, the State filed a notice of intent to use evidence of other crimes. Defendant proceeded to trial on February 27, 1996, and, after selecting a jury, the trial court conducted a hearing regarding the admissibility of the other crimes evidence. At the conclusion of the hearing, the trial court took the matter under advisement and, on the morning of the second day of trial, ruled that evidence of other crimes was admissible. The trial proceeded and the jury returned the responsive verdict of guilty of manslaughter.
On April 4, 1996, the State filed an habitual offender bill of information seeking the enhanced sentencing of defendant as a fourth felony offender in accordance with La. R.S. 15:529.1. On April 10, 1996, the trial court sentenced defendant to forty years imprisonment at hard labor, with credit for time served. Defendant entered a plea of not guilty to the habitual offender bill of information. On September 12, 1996, the trial court conducted a hearing on the habitual offender bill and adjudicated defendant to be a fourth felony offender. The trial court vacated the original sentence of forty years and resentenced defendant, in accordance with La. R.S. 15:529.1(A)(c)(ii)[1], to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence and with credit for time served. Defense counsel made an oral motion to reconsider sentence. The trial court denied the motion. Defendant filed this appeal, assigning six errors, including a request that we review the record for any errors patent.

ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE
By these assignments of error defendant argues that the trial court erred in admitting evidence of other crimes and hearsay evidence of other crimes. More particularly, defendant finds error in the trial court admission of four separate statements relating to other crimes committed by him.
In general, evidence of other crimes is inadmissible in the guilt phase of a criminal trial for several reasons. Admission of evidence that defendant may have committed other crimes creates the risk that defendant will be convicted of the present offense simply because he is a "bad person." Juror confusion may occur where collateral issues are introduced. In addition, a defendant may not be prepared to face such attacks. State v. Code, 627 So.2d 1373 (La.1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994), rehearing denied, 512 U.S. 1248, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994).
Statutory and jurisprudential exceptions exist to this rule where the State offers evidence of other crimes for purposes other than to show the character of defendant. State v. Code, supra. La. C.E. art. 404(B)(1) provides such an exception as follows:
Except as provided in Article 412 [not relevant here], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *1085 opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings.
Furthermore, the State must show that the evidence is necessary to prove a matter genuinely at issue, that there is clear and convincing proof that the accused committed the other crime and that the probative value of the evidence of the other crime outweighs its prejudicial effect. State v. Martin, 93-0285 (La. 10/ 17/ 94), 645 So.2d 190, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995), rehearing denied, ___ U.S. ____, 116 S.Ct. 20, 132 L.Ed.2d 904 (1995).
Prior to trial, the State filed notice of its intent to use evidence of other crimes committed by defendant for the purpose of establishing motive, intent and absence of mistake or accident. Specifically, the notice states:
The State intends to offer evidence which will show that two weeks prior to the murder, the victim, who was previously involved in a relationship with the defendant, had left him due to repeated physical and verbal abuse. During this two week period, defendant visited Ms. Jackson's residence several times at the aforementioned address, in an effort to coerce the victim into leaving with him. During these incidents, defendant became both physically and verbally abusive toward the victim when she refused to leave the residence with him. The verbal abuse involved overt threats of injury and death toward Ms. Jackson. These instances of violent conduct culminated in the murder of Ms. Jackson by the defendant only hours following the last such incident on May 5, 1995.
At the commencement of the hearing regarding the evidence of other crimes, the State orally amended the notice "to include a single incident which occurred shortly after midnight on May 5, 1995" and "involved an incident in which the defendant showed up at the victim's residence ... and made several threats toward the victim, Ms. Schwann Jackson." The trial court ruled that the evidence was admissible and it was admitted at trial.
Defendant first complains of the admission into evidence of verbal threats which he allegedly made toward the victim on the night of the killing. Wanda Adams testified that shortly after midnight on May 5, 1995, she and Schwann Jackson were sitting on the porch of her residence when they observed defendant approaching. They went inside the residence to call the police "because he [defendant] wasn't supposed to be around our house." When Wanda Adams later exited the apartment, defendant said, "Tell that bitch to come out of there." Wanda Adams responded, "No, you get from around here. My mama don't want you around the house anyway." Defendant then said, "Well, tell that whore that I'm going to f* * * her up." Thereafter, Officer Toney arrived on the scene and persuaded defendant to leave the area.
Defendant contends that this evidence was inadmissible because the threats or evidence of other crimes failed to prove the other crimes by clear and convincing evidence as required by State v. Jackson, 625 So.2d 146 (La.1993) and State v. Code, 627 So.2d 1373 (La.1993). Defendant further argues that the State failed to show that the evidence was necessary to prove a genuine issue in question and that the prejudicial effects greatly outweighed any probative value of the evidence. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190; La. C.E. art. 403.
The State argues that the evidence was admissible under La. C.E. art. 404(B) to prove motive, intent and the absence of mistake or accident in connection with the killing. We agree.
The threats or other crimes were proven by clear and convincing evidence because it was testified to by an eyewitness to the events. Further, the testimony was probative of a genuine issue in question because *1086 the defense had claimed that the killing was an accident. The evidence of threats made by defendant towards the victim was probative of defendant's intent and the absence of mistake or accident. We find that this argument lacks merit.
Next, defendant argues that the trial court erred in permitting Wanda Adams to testify concerning previous violent altercations between defendant and the victim. Wanda Adams testified that the victim did not want defendant around her because he beat her. Defendant argues that this testimony or evidence was inadmissible because it was not proven by clear and convincing evidence. Wanda Adams did not testify that she had witnessed any violent acts between defendant and the victim. Under assignment of error number three, defendant also argues that this evidence was inadmissible because it was hearsay.
The state points out that these defense arguments lack merit because the testimony at issue was brought out by defense counsel in his cross-examination of Wanda Adams, without objection.
Our review of the record on this issue confirms the State's position. The statement by Wanda Adams that the victim did not want defendant around because he beat her was made as a result of a defense question and it was not objected to by defense counsel. Since there was no contemporaneous objection to the testimony and it was brought out on defense cross-examination, it presents no reversible error on appeal. This argument lacks merit.
Next, defendant argues that the trial court erred in permitting other crimes evidence concerning defendant's use of drugs. During the State's examination of Officer Marcus Toney, he was asked if either defendant or the victim stated anything to him about crack cocaine being smoked. The officer was also asked if defendant said anything to him about being kicked out of that residence the evening of the killing because he was smoking crack. The officer responded negatively. Defendant argues that he suffered serious prejudice by the prosecutor's remarks which implied that he used crack cocaine.
The State argues that the evidence was admissible to rebut a statement of defendant that the reason they were trying to make him leave the house that night was because they wanted to smoke crack cocaine and he objected. He did not want the victim to stay at that house with drugs being used.
We find that the evidence was admissible to rebut the defense statement that the other residents of the house were using drugs. And, even though the question erroneously implied that defendant was using drugs, the officer answered negatively, committing no reversible error. State v. Ware, 345 So.2d 33 (La.1977).
Finally, under this assignment of error, defendant argues that the trial court erred in allowing evidence of other crimes by a witness' reference to obtaining a picture of defendant from the bureau of identification (B of I). During direct examination, the State asked Detective Ralph Sacks, "Did you in fact obtain a B of I, a bureau of information photo of Mr. Humphrey?"
The State argues that the comment by the detective does not constitute reversible error, relying on State v. Holmes, 94-907 (La.App. 5th Cir. 3/15/95), 653 So.2d 642.
In Holmes, this court addressed an issue similar to the one presented herein. The officer testifying stated that he had compiled a photographic lineup and had obtained a "booking photograph" of the defendant for the lineup. The defense argued that because the police had defendant's photograph on file could be understood as evidence of a prior arrest or conviction. This court found no merit in defendant's arguments noting that the officer did not refer to a specific crime.
Likewise, in State v. Harris, 258 La. 720, 247 So.2d 847 (La.1971), the Supreme Court found that, where the officer testified that he went to the "B of I at police headquarters" to obtain defendant's picture, no reversible error was presented.
Here, the reference to where defendant's photograph was obtained was even more oblique than in Harris or Holmes. There was *1087 no indication that the photos were obtained from police headquarters or that they related to a previous booking. We find no error in this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, defendant argues that he was denied a fair trial "when the trial court declared a mistrial, dismissed the jury, and recalled them the following day to continue the trial."
The action to which defendant refers occurred following the reference by Detective Sacks to the B of I photograph. Outside of the presence of the jury, defense counsel made a motion for a mistrial which the trial court ultimately granted. The State was given time to apply to this court for review of that ruling. Pending action by the court of appeal, the jury was allowed to leave court for the afternoon with instructions that they would be contacted about returning the following day. This court reversed the trial court, State v. Humphrey, 96-175 (La.App. 5th Cir. 2/28/96), writ denied, 96-513 (La.2/29/96), 668 So.2d 373, and the trial resumed the following morning. It is this afternoon recess about which defendant complains.
It is difficult to see defendant's prejudice by this recess. Defendant argues that the "dismissal" of the jury prejudiced him by calling attention to the officer's reference to the B of I photograph. Defendant also makes vague references to inadequate instructions by the trial court before the recess. We find no merit in either of these arguments.
First, it should be noted that there was absolutely no contemporaneous defense objection made to the recess. The trial judge informed counsel what he was going to do, recess for the afternoon for review by the court of appeal, and no objection was made. Absent objection, the alleged error has not been preserved for appellate review. La. C.Cr.P. art. 841.
Furthermore, as stated in our consideration of assignment of error number one, no grounds for a mistrial were presented by the officer's reference to the B of I photograph. Thus, the mistrial originally granted by the trial court was properly set aside.
The record does not support defendant's account of the trial court's action, that is, dismissal of the jury and recall. Nor does it evidence attention being called to the "B of I" comment. To the contrary, the record indicates that the trial judge was very careful to not call attention to the reason for the recess. The trial court stated to the jury:
[W]hat we're going to essentially do is to put you on what we call standby because there are some matters which the Court cannot go into which prevent us at this time from proceeding any further. You are not to take these delays as having any implications one way or another with respects [sic] to the guilt or innocent [sic] of the defendant or anything else other than the fact that the Court finds it necessary to do this.... These thing happen in court periodically.... Again, that is all I can say to you except have a good evening and do not discuss this case and you're still a member of this jury and you're still under the constraints which the Court had described to you and you're not permitted to answer any questions from anyone.
The trial court did not indicate in the jury's presence that it was declaring a mistrial nor a dismissal. To the contrary, the trial court stated just the opposite. This was not a sequestered jury. There was nothing unusual or erroneous about recessing the trial for the afternoon. We also find no indication in anything that was said that any attention was called to the "B of I" remark. Accordingly, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error defendant argues that his original sentence to forty years at hard labor was excessive.
As pointed out by the state, that sentence was vacated as a result of the defendant's adjudication as an habitual offender. There is nothing for this court to review regarding that sentence.

*1088 ASSIGNMENT OF ERROR NUMBER FIVE

By this assignment of error defendant argues that the trial court erred in adjudicating him a fourth felony offender. More particularly, defendant argues that the State did not prove that the cleansing period between the first and second offense had not lapsed.
The exhibits and testimony introduced by the State at the habitual offender proceeding established that defendant was convicted of three predicate felonies. In particular, the exhibits show that on December 17, 1974 defendant was convicted of possession of heroin, his first predicate felony. On January 21, 1975 defendant was sentenced to four years imprisonment at hard labor on that conviction "with credit to be given for the time served from July 16, 1974." The record further shows that defendant committed the second predicate felony of simple robbery on October 7, 1982.
At the time of the commission of the underlying felony, La. R.S. 15:529.1(C) established a seven-year cleansing period as follows[2]:
This Section shall not be applicable in cases where more than seven years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction or convictions, or adjudications or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any said seven-year periods.
The State bears the burden of showing that the predicate convictions fall within the cleansing period. State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). The imposed sentence does not govern the determination of the expiration of the cleansing period. Rather, the actual discharge from supervision by the Department of Corrections controls. Thus, the commencement of the cleansing period is from the date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Serio, 94-131 (La.App. 5th Cir. 6/30/94), 641 So.2d 604, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388, reconsideration denied, 94-2025 (La.3/17/95), 651 So.2d 261, appeal after remand, 95-338 (La.App. 5th Cir. 2/14/95), 670 So.2d 1273. However, if less than the cleansing period has elapsed between defendant's conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Gaines, 93-1554 (La.App. 1st Cir. 6/24/94), 639 So.2d 458, writs denied, 94-1921 (La.11/4/94), 644 So.2d 1058 and 94-1980 (La.11/4/94), 644 So.2d 1058.
In this case, more than seven years elapsed between defendant's conviction for the first offense, December 17, 1974, and the commission of the second offense, October 7, 1982. Thus, it was incumbent upon the State to prove defendant's discharge date for the first offense in order to establish that seven years did not pass between that date and the date of the commission of the second offense. There is nothing in the record to show the date of defendant's discharge from state supervision on the first offense. Therefore, we find that the State failed to prove that the cleansing period did not lapse between the first and second offenses.
*1089 Accordingly, the adjudication of defendant as a fourth felony offender and the sentence must be vacated and the case remanded to the district court for further proceedings.[3]

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error defendant requests that we review the entire record for errors patent.
Upon review, we find no error/s patent on the face of the record.
Accordingly, for the reasons stated above, defendant's conviction for manslaughter is affirmed and his adjudication and sentence as a fourth felony offender is vacated and the case is remanded to district court for further proceedings.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; CASE REMANDED.
NOTES
[1] The trial court incorrectly referred to the provision as "15:529.1, Subsection B(2)(i)."
[2] The legislature subsequently extended the cleansing period from seven to ten years. See Acts 1995, No. 839, § 1. However, because the underlying felony occurred prior to the amendment extending the cleansing period to ten years, the application of the ten-year cleansing would violate the constitutional prohibitions against ex post facto laws. See State v. Morgan, 96-588 (La.App. 5th Cir 12/30/96) 686 So.2d 1048, where this Court held that the application of the amended seven-year cleansing period violated the prohibitions against ex post facto laws. In Morgan, defendant committed the underlying felony prior to the effective date of the amendment to La. R.S. 15:529.1(C) which extended the cleansing period to seven years.
[3] Since the principles of double jeopardy do not apply to the retrial of the penalty enhancement statute, defendant may be retried as an habitual offender. See State v. McIntyre, 496 So.2d 1204 (La.App. 5th Cir.1986).