GUIDRY, Justice *
hThe issue presented in this case is whether the trial court may allow a criminal jury to be informed of the possible mandatory minimum sentence faced by the defendant if, after a conviction on the offense being tried, he were to be sentenced under the Habitual Offender Law. For the reasons set forth below, we find the district court erred in denying the State’s motion in limine, which sought to disallow the defendant from mentioning in argument the mandatory minimum sentence the defendant could be subject to under the Habitual Offender Law should the State seek to enhance his sentence under that law and should the court find the State has proved all of the elements to warrant enhancement of the sentence. We find the issue of the possible mandatory minimum sentences that may be imposed if the defendant is convicted and the State successfully pursues enhancement of the sentence under the Habitual Offender law is too attenuated from the guilt phase of trial to be discussed before a jury, because it shifts the focus of the jury from its duty to determine guilt or innocence to issues regarding sentencing, possibly causing confusion of the issues and inviting the jury to speculate as to why a defendant may be facing such a term of imprisonment. Accordingly, we reverse the district court’s ruling.
|,FACTS AND PROCEDURAL HISTORY
The defendant, Corei K. Guidry, was charged by a bill of information with one count of possession with intent to distribute heroin, a violation of La. R.S. 40:966(A)(1); one count of possession with intent to distribute cocaine, a violation of La. R.S. 40:967(B)(1); one count of possession with intent to distribute Tramadol, a violation of La. R.S. 40:969(B)(2); and one count of conspiracy to commit simple escape, a violation of La. R.S. 14:(26)110(A). The charge of possession with intent to distribute heroin carries the highest sentence: ten to fifty years at hard labor, La. R.S. 40:966(B)(1). Prior to the start of the trial, the State filed a motion in limine to exclude mention of an sentence. In its motion, the State sought to prohibit the *817 trial court and the defendant from informing the jury that, if convicted, the defendant could face a possible sentence of life imprisonment as a fourth offender under the Habitual Offender Law, La. R.S. 15:529.1 et seq. The trial court denied the motion, and the court of appeal denied the State’s writ application. The State then sought a stay and writs in this court, which issued a stay and invited a per curiam from the trial court. After supplemental briefing from both parties, this court granted the State’s writ application to review the district court’s ruling. State v. Guidry, 16-1412 (La. 9/16/16), 206 So.3d 199, 2016 WL 5462459.
ANALYSIS
The State and the defendant agree the applicable decision of this court with regard to the inclusion of sentencing ranges in arguments to the jury and jury instructions provides as follows:
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. State v. Hooks, 421 So.2d 880 (La. 1982); State v. Washington, 367 So.2d 4 (La. 1978). In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense’s penalty is within the discretion of the trial judge. State v. Williams, 420 So.2d 1116 (La. 1982); State v. Dawson, 392 So.2d 445 (La. 1980); State v. Carthan, 377 So.2d 308 (La.1979); State v. Blackwell, 298 So.2d 798 (La. 1973) (on rehearing) ....
State v. Jackson, 450 So.2d 621, 633-34 (La. 1984).
Although the State originally argued below that the trial court abused its discretion in allowing the jury to be informed of the sentence the defendant could face if his sentence was successfully enhanced under the Habitual Offender Law, the State now argues the court should remove from the trial court’s discretion the decision to permit criminal juries to be made aware of possible sentences under the Habitual Offender Law.[1] The defendant counters the law should remain as settled for some forty years, that an enhanced sentence under the Habitual Offender Law qualifies as an “instance[ ] other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict,” and that the trial court under the facts of this case did not abuse its discretion in permitting the jury to be informed of the possible mandatory minimum sentence as a fourth felony offender. For the reasons set forth below, we hold the trial court erred in applying Jackson to allow the jury to be informed of the possible enhancement of the defendant’s sentence under the Habitual Offender Law if the defendant were convicted and if the State should successfully seek to enhance his sentence under the Habitual Offender Law.
|4In prefacing our reasons, a brief outline of the applicable law and the jurisprudence is in order. We commence with the statutes governing the scope of the argument and the duties of the trial court in charging the jury.
Louisiana Code of Criminal Procedure article 774 states, in pertinent part that “[t]he argument shall be confined to evidence admitted, to the lack of evidence, to *818 conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” .The court shall charge the jury: .
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to. accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
La. C.Cr.P. art. 802.
With regard to sentencing La. C.Cr.P. art. 871 states in part that “[a] sentence is the penalty imposed by the court on a defendant." The “law applicable to the case” is, therefore, the critical inquiry in determining'whether a jury may be informed 'of potential sentencing, as discussed more fully below. :
Prior to 1974, this court’s jurisprudence clearly disfavored parties and trial courts informing a criminal jury of potential sentences, whether the sentence was mandatory or not, unless the offense charged was capital in nature. In State v. Harris, 258 La. 720, 247 So.2d 847 (1971), this court examined the meaning of “the law applicable to the case” to determine whether sentencing fell within the scope of La. C.Cr.P. arts. 774 and 802. There, the defendant sought to argue to the jury the severity of the penalty for armed robbery, pointing out the crime carried a maximum sentence of ninety-nine years imprisonment, without benefit of ^probation, parole, or suspension of sentence. He also sought to inform the jury of the minimum mandatory sentence. Ultimately, the trial judge ruled defense counsel could not argue the sentencing law to the jury. In affirming the ruling, the Harris court explained:
The determination of the appropriate penalty and the imposition of sentence in non-capital cases are functions of the judge. The jury is concerned only with guilt.
Under Article 802 of the Louisiana Code of Criminal Procedure, the judge is required to-charge the -jury as to the law applicable to the case. Under Article 774, argument to the jury is restricted to the evidence admitted, to the lack of evidence, to conclusions of fact, and. to the law applicable to the case.
We have held that sentence regulations in non-capital cases, such as those relating to mandatory terms, probation, or parole, are inappropriate subjects for the judge’s charge to the jury. These matters are foreign to the jury’s function of guilt determination and, consequently, form no part of “the law applicable to the case.” See State v. Andrus, 250 La. 765, 199 So.2d 867 [ (1967)]; State v. Green, 244 La. 80, 150 So.2d 571 [ (1963) ].
In State v. Green, supra, we said:
In this requested special charge defendant sought to have the jury charged what sentence could be imposed under the law in the event of conviction for violation of the Uniform Narcotic Drug Act, under which defendant was being tried, and also charged that a person so convicted was without the benefit of parole, probation, or suspension of sentence.
Under the law of this state the judge is required to charge the jury all the law applicable to the accused’s guilt or innocence of the crime charged, or any lesser crime included therein, in the light of the evidence adduced. It is the duty of the jury in such cases to determine the guilt; or innocence of the accused, but in the event of conviction it is the duty of the judge, and not the jury, to impose sentence. The fixing of the punishment for conviction *819 is solely within the province of the judge, and is no concern of the jury except in capital cases where the jury may return a verdict of ‘guilty without capital punishment’ and preclude the judge from imposing the death sentence. Therefore this requested special charge was not pertinent, and was correctly refused.
By the same token, sentence regulations form no part of the applicable law to be argued by counsel before the jury. To allow | (¡argument of these matters would inject irrelevant considerations into the jury’s deliberations as to guilt.
The prevailing rule is that when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for argument to the jury. Abney v. State, 123 Miss. 546, 86 So. 341; 53 Am.Jur., Trial, § 467, p. 373. The supporting decisions from other jurisdictions are collated in the Annotation, Argument to Jury—Law or Lawbooks, 67 A.L.R.2d 245, 294. These decisions are based upon the sound principle that le,gal matters irrevelant [sic] to guilt should not be pressed "upon the jury.
Harris, 258 La. at 729-31, 247 So.2d at 850-51.[2]
In 1974, the court again endorsed the principle that juries were not concerned with issues outside of the guilt or innocence of the defendant* albeit with the exception of capital cases, and affirmed a trial court’s refusal to instruct the jury on the penalty range for the charge of armed robbery. State v. Blackwell, 298 So.2d 798 (La. 1973). On rehearing, the Blackwell court followed Harris to hold that “[i]n those jurisdictions where the-jury determines only guilt or innocence and the court imposes the penalty, it is not error for the court to refuse to instruct the jury on possible penalties. The general view is that penalty is simply of no concern to the jury.” 298 So.2d at 804 (on rehearing). The Blackwell court went on to note, however, that “[o]ur law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge.” Id. at 804 and 804 n.3x (noting that it is not reversible error to instruct thé jury on thé penalty and" that many judges in Louisiana regularly do so). The Blackwell court further distinguished non-capital cases from capital cases, wherein there is a mandatory 17minimum sentence of life imprisonment “sufficient to justify informing the capital case jury of the effect of its verdict.” Blackwell, 298 So.2d at 804 (on rehearing).
In State v. Prater, 337 So.2d 1107 (La. 1976), the defendant contended the trial judge had erred in refusing to charge the jury that, in the event defendant was found guilty of distribution of heroin, a mandatory life sentence would be imposed. The defendant argued justice requires the jury be informed of this mandatory penalty so that Jurors will give more careful consideration to their verdict. The Prater court in a plurality decision found no abuse of the trial court’s discretion, citing Harris and Blaclmell, However, one justice concurred only in the result, noting that four *820 justices, a majority, had expressed their view that jurors should be fully informed of the consequences of their verdicts, including the penalties involved, see 337 So.2d at 1109-10, Tate, J., concurring, at least where there is no sentencing discretion following a conviction, see 337 So.2d at 1110-11, Calogero, J., dissenting. The concurring justice signaled the erosion of Blackwell, and by association the principle espoused in Harris, noting that “in any case tried after the finality of the present decision I shall regard the bench and bar as on notice that, in the view of a majority of this court, a charge and argument may be required and permitted, despite Blackwell, when the statutory offense requires a mandatory legislative penalty, with no judicial discretion as to its imposition following verdict. Thus, to this extent at least, Blackwell may be regarded as overruled prospectively by the present opinion.” 337 So.2d at 1110, Tate, J., concurring.
The court in State v. Milby, 345 So.2d 18 (La. 1977), introduced the first iteration of what has become more familiarly known as the Jackson rule, set forth above at the outset of this analysis. As the State points out, subsequent cases more explicitly adopted the view that trial courts must allow juries to be informed of the | ^sentence where the sentence following a conviction is mandatory. Additionally, however, subsequent cases interpreted language from Blackwell, language the State describes as dictum, that the trial court has the discretion under the law to allow, or not to allow, jury instruction or argument on penalties that are otherwise not mandatory. The Milby court set forth the state of the law, explaining as follows:
In State v. Blackwell, 298 So.2d 798 (La. 1973), we held that jury instruction or argument on penalties may be allowed or not, within the discretion of the trial court, because imposition of sentencing is within the province of the judge and is not a jury function. In State v. Prater, 337 So.2d 1107 (La. 1976), a majority of this court agreed that the Blackwell rationale is inapplicable where, upon conviction, the trial judge must impose a mandatory sentence; and that, therefore, the trial court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than by the judge.
State v. Milby, 345 So.2d at 21. This modification of Blackwell applied prospectively after Prater. Milby, 345 So.2d at 21.
Although the Jackson rule has been settled law, we agree the time has come to address the Jackson rule in the context of whether to permit disclosure to the jury of mandatory minimum sentences that could possibly be imposed under the Habitual Offender Law. To that end, we turn to the Habitual Offender Law itself and the jurisprudence applying Jackson in that particular context.
The procedure under the Habitual Offender Law, La. R.S. 15:529.1, allows for a sentence to be enhanced based on the degree of a defendant’s recidivism. As the State points out, unless and until a bill of information separate from the underlying charging document is filed by the district attorney after a defendant’s felony conviction, there can be no finding of habitual offender status to justify an enhanced penalty under " the law. See La. R.S. 15:529.1(D)(1)(a). A defendant may be deemed a multiple offender only after the following sequence of events occurs: the filing of a multiple offender bill of information; an appearance before the court; |fla contradictory hearing, if necessary; the presentation of evidence on which the district attorney bears the burden of proof beyond a reasonable doubt on any issue of *821 fact; and either a finding by the court that the defendant has been convicted of a pri- or felony or felonies or the defendant’s acknowledgment or confession in open court, after being duly cautioned as to his rights, that he has been so convicted. La. R.S. 15:529.1(D)(1)(a) and (b), (D)(2), and (D)(3). It is only “when the judge finds” the defendant has jaeen convicted of a pri- or felony or felonies, or the defendant acknowledges such status, that the court “shall sentence him to the punishment prescribed in this Section.” La. R.S. 15:529.1(D)(3).
Several cases from the court of appeal have held the trial court did not abuse its discretion in disallowing the jury to be informed of the potential sentence under the Habitual Offender Law. In State v. Dominick, 94-1368, pp. 4-5 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, 3, writ denied, 95-2291 (La. 2/2/96), 666 So.2d 1091, the Fourth Circuit applied Jackson to a case in which there was a possibility that a multiple bill would be filed upon conviction to enhance the defendant’s sentence. There, the defendant had initially pleaded guilty with the understanding that he would not be multiple billed, but the State, notwithstanding that agreement, filed a multiple bill. Consequently, the defendant was allowed to withdraw his guilty plea. The trial court granted the State’s motion in limine prohibiting defense counsel from relating to the jury the minimum mandatory period of incarceration to which appellant could be exposed under the Habitual Offender Law. The defendant was convicted, and on appeal he maintained that, considering the State’s clear and known intention to file a multiple offender bill alleging three predicate offenses, the defense should have been permitted to advise the jury that a conviction would result in a minimum mandatory sentence of twenty years flat time. The court of appeal found no merit to that claim:
hnAlthough the multiple bill carries a mandatory minimum, the filing of the multiple bill is optional with the State. In any event, the allegations of the multiple bill must be proved before the mandatory minimum sentence becomes an issue and under [State v. Dorthey, 623 So.2d 1276 (La. 1993)], the trial court has the discretion in not applying the mandatory minimum sentence if the facts warrant. Accordingly, any instruction or argument to the jury relative to the minimum sentence that a defendant could receive as a quadruple offender is within the discretion of the trial judge. Accordingly, this assignment is without merit.
Dominick, 94-1368, p. 5, 658 So.2d at 4. The State contends the Fourth Circuit thus held that no mention of a possible recidivist enhancement sentence was allowed, even when it was all but inevitable that a multiple offender bill would be filed.
Similarly, in State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273, 278-79, the defendant asserted the trial court erred in failing to grant his motion for a mistrial due to the erroneous instructions gratuitously given to the jury regarding sentencing. He contended the trial court had volunteered information on the sentencing range for attempted possession of cocaine and erroneously stated he could get probation, when he was not eligible for probation as a putative third offender. Defense counsel requested a mistrial, which the trial court denied. The Fourth Circuit affirmed, reasoning as follows:
Appellant contends that the jury must be informed that the sentencing range differs for multiple offenders. In the instant case, appellant elected not to testi-fry; thus, his prior convictions were not presented to the jury. Had the jury been instructed on the sentencing range for *822 habitual offenders, the- jury would have known that appellant had been previously convicted. Such result would violate his Fifth Amendment rights.
Furthermore, a possible adjudication as a habitual offender is a separate proceeding that punishes one for his status as a recidivist, not for the most recent conviction. Since á multiple offender bill of information is not mandatory, but at the discretion of the prosecutor, the possibility that- appellant may later be subject to sentence enhancement-as a recidivist is speculative. At the time of trial, no such bill had been filed, and there was no showing that even-if one was filed later, that the State could prove appellant’s status as a recidivist.
Guillard, 98-0504, p. 9, 736 So.2d at 278-79.
In State v. Richardson, 02-1207, pp. 2-5 (La.App. 4 Cir. 10/9/02), 830 So.2d 344, 345-46, the defendant moved for-a mistrial, arguing statements made by the prosecutor and the trial judge that the defendant could be sentenced up to five years, and the prosecutor’s statement implying the defendant could possibly walk out of court a free man, were improper. The district court denied the motion, reasoning the defendant had opened the door by stating in closing argument that he faced “a long time in prison,” (presumably referring to the fact that the defendant was potentially a multiple offender),- and the State was justified in responding to the defendant’s assertion. The trial court found the defendant's tactics to be improper because his argument relied solely on sympathy, passion, prejudice, and bias, rather than facts, guilt, or the lack thereof. The Fourth Circuit affirmed the denial of the mistrial, reasoning as follows:
The trial court did not err by allowing argument and instruction concerning the sentencing range without regard to a multiple bill. As the Louisiana Supreme Court found.in Jackson, the choice to permit an argument about the penalty is within the discretion of the trial judge. Furthermore, while the state filed a habitual offender bill of information after defendant was convicted, no habitual offender hearing has been held. Under our ruling in Guillará, the state would still have to prove that defendant is a recidivist in order to increase his sentence and, thus, until that occurs, defendant’s sentence remains within the original range. Therefore, in addition to the fact that defendant opened the door for a discussion on the sentencing range, the trial court’s instruction on the sentencing range ^as -not only within his discretion, but accurate. -
Richardson, 02-1207, pp. 4-5, 830 So.2d at 346.
In addition to the Fourth Circuit jurisprudence, this court has recently,, addressed essentially the same issue presented in this case. In State v. Lucien, 16-715 (La. 4/19/16), 197 So.3d 689, 2016 WL 4482540, the defendant was charged with possession with intent to distribute heroin, resisting an officer, and obstruction of justice. The State |iafiled a Prieur notice, indicating its intent to introduce evidence of two prior convictions for possession of heroin with intent to distribute and possession of cocaine with intent to distribute. The trial court granted the State’s request to introduce evidence of the prior convictions. The .trial court also ruled that, if the State introduces evidence of the prior convictions, the defense may inform the jury that the defendant faces a life sentence as a third' offender under the Habitual Offender Law. The State sought writs, which the court of appeal denied. In this court, the State filed a writ application seeking to prohibit the defendant from mentioning that he faced the possibility of a life sen *823 tence (1) if convicted and (2) if the State filed a multiple offender bill and prevailed. This court summarily granted the State’s writ application with the following order, specifically finding the trial court had abused its discretion in its ruling:
Granted. We find the district court abused its discretion. The ruling'of the district court is reversed insofar as it permits the defendant to inform the jury of the possible sentence faced by the defendant if defendant is convicted and the state successfully pursues recidivist sentence enhancement. The matter is remanded to the district court for further proceedings consistent with this order.
Lucien, 16-715, p.1, 197 So.3d at 689-90.
In the instant case, the trial court gave reasons for denying the State’s motion in limine. In au explanatory per curiam, the trial court framed the issue in terms of “whether it has abused its discretion to allow mentioning to the jury that, if convicted, the defendant could receive a minimum sentence pursuant to the habitual offender law.” The trial court cited State v. Dominick, 94-1368, p. 5, 658 So.2d at 3, and State v. Jackson, 450 So.2d at 633-34. The trial court indicated its belief that “it is clearly misleading for the state to agree with mentioning before the jury, the mandatory minimum sentence of defendant’s instant charge, but not the [-^mandatory minimum sentence imposed pursuant to the habitual offender law.” The trial court elaborated:
•Although the filing of the multiple bill is optional with the state, if the allegations are proven, this court is unpersuaded that the state will not vigorously pursue the allegations set forth in a multiple bill so that the mandatory minimum could apply to defendant’s sentence. More particularly, since the defendant has four open cases before this court,- in this instance, the court exercises its discretion because the court finds that the interest of justice is not served if the State is allowed to “have-its cake and eat it too.”
The trial court summed up the State’s strategy as follows: “Apparently, the State seems content to utilize the options of insinuating the filing of a multiple bill during plea negotiations, but hiding its hand when the defendant exercises his constitutional right to proceed to trial.” The trial court concluded, stating: “Given the facts, the law, arguments of counsel, and the totality of the circumstances in this case, this court finds that the ruling was a fair and legal decision well within the court’s discretion and at no time did the court in any way ■abuse its discretion.”
The court of appeal denied the State’s writ application. The dissenting judge found “that the issue of possible sentences which may be imposed if the State pursues a multiple bill against the defendant is too attenuated from the guilt phase of the trial to be discussed in front of the jury." State v. Guidry, 16-0763 (La. App. 4 Cir. 07/27/16) (unpublished), Lobrano, J., dissenting (emphasis in original). The dissenting judge would have found the trial court’s ruling was “an abüse of discretion ‘insofar as it permits the defendant to inform the jury of the possible sentence faced by defendant if defendant is convicted and the state successfully pursues' recidivist sentence enhancement.’ State v. Michael Lucien, 2016-KK-0715 (La. 4/19/16), 197 So.3d 689.” Id.
The issue presented is whether the trial court may allow a criminal jury to be informed of the possible mandatory minimum sentence faced by him if, after a | ^conviction on the offense being tried, he were to be sentenced as a multiple offender under the Habitual Offender Law. The trial court found it dispositive that *824 the State in all likelihood would file a multiple offender bill if the defendant went to trial, and the State had used the. high probability of an enhanced sentence in an attempt to leverage a guilty plea. The defendant similarly contends the Orleans Parish District Attorney’s Office routinely chooses to exercise its discretion to file a multiple offender bill at rates significantly higher than other parishes. That the District Attorney raises the possibility of an enhanced sentence with a mandatory minimum is, to the defense, an unfair advantage in plea negotiations. The jurisprudence resulting in Jackson, the defendant argues, manifests the concern the courts had in the 1970s and 1980s about the trend toward legislatively-determined mandatory minimum sentences, which removed the discretion historically afforded to judges during sentencing.
We find no merit to the defendant’s arguments. Even if the State is certain to eventually file a multiple offender bill, we do not find this fact dispositive in favor of informing the jury of the possible mandatory minimum sentences if the allegations in the multiple offender bill are sufficiently proven. Similarly, because the State has outlined the consequences of a multiple offender bill during plea negotiations does not translate into an unfair advantage to the State, such that the jury should necessarily be informed of the possible sentences under the Habitual Offender Law.
A multiple offender bill is generally not filed until after conviction, such that it does not logically constitute the “law of the case” for the subject offense at trial as it pertains to the scope of the jury’s duty as the factfinder. The jury has no role in the enhancement of a sentence under the Habitual Offender Law, because once hfithe multiple offender bill is filed after conviction, the adversarial hearing is conducted before the judge and the State must prove to the judge the allegations in the multiple offender bill. The principle that legal matters irrelevant to guilt should not be pressed upon the jury, which we explained in Harris, 258 La. at 729-31, 247 So.2d at 847-51, applies even more forcefully in the context of the Habitual Offender Law. It is axiomatic that, if the trial court has not yet conducted a sentencing hearing, any sentence as a multiple offender is speculative and indeterminate. As the Guillará court noted, “a possible adjudication as a habitual offender is a separate proceeding that punishes one for his status as a recidivist, not for the most recent conviction.” 98-0504, p. 9, 736 So.2d at 278-79. Thus, the defendant’s status as a putative multiple offender is irrelevant to the determination of guilt or innocence of the tried offense. Allowing the jury to be informed of the potential mandatory minimum sentences if and when the defendant is proven to be a second, third, or fourth felony offender has the potential to shift the focus of the jury from a determination of guilt or innocence to issues regarding sentencing. Such a shift would likely confuse the issues for which the jury is responsible and invite jurors to speculate about sentencing, including why a particular defendant is facing such a term of imprisonment.[3] In sum, the issue of possible mandatory minimum sentences that could be imposed if the State successfully pursues enhancement through a multiple offender bill is too far attenuated from the guilt phase of trial to be discussed before a jury.
We thus hold that to allow such disclosure constitutes error. The jurisprudence culminating in the Jackson rule developed *825 outside of the context of the Habitual Offender Law. The defendant asserts the non-mandatory nature of |1fisueh enhanced sentencing should be subject to the same jurisprudential rules, and therefore should be subject to the same discretion of a trial court to permit the jury to be made aware of the potential sentence as a multiple offender. However, because the jury has no constitutional or statutory role in the enhancement of a sentence under the Habitual Offender Law, we find the trial court erred in allowing a jury to be informed of the possible sentence should the defendant be convicted and his sentence enhanced under the Habitual Offender Law. Accordingly, the district court’s ruling is reversed, the stay issued by this court is hereby lifted, and the matter is remanded to the district court for further proceedings.
REVERSED; STAY LIFTED; REMANDED
JOHNSON, Chief Justice, dissents and assigns reasons
WEIMER, Justice, dissents and assigns reasons.
GUIDRY, Justice, additionally concurs and assigns reasons.
CRICHTON, Justice, additionally concurs and assigns reasons.
GENOVESE, Justice, additionally concurs for the reasons assigned by Justice Guidry and Justice Crichton.

 Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

. The State allows that an exception could be fashioned when the defendant testifies and is confronted before the jury with his prior convictions for impeachment purposes. We need not address that suggestion, as we are not here confronted with that factual scenario.

. Harris was not a unanimous decision. The concurring justice, 258 La. at 732, 247 So.2d at 851, Tate, J., concurring, sided with the dissenters who reasoned the jury should be informed of the applicable sentencing law: 258 La. at 732-33, 247 So.2d at 851, Dixon, J., dissenting (the jury protects against tyranny of the law and the penalty alone may render a law oppressive), and 258 La. at 734-37, 247 So.2d at 852-53, Barham, J., dissenting (there is no constitutional or statutory prohibition against arguing to thé jury or even charging the jury, as to the penalty that . makes the law criminal, and because juries do in fact consider penalties in arriving at verdict, it would appear to be good law that the ■ jury be correctly informed of the penalty).

. As the Guillará court also noted, informing the jury of the fact of the defendant’s prior convictions, when he has not taken the stand, raises important constitutional issues.