MOORE, J.
Benjamin Michael Floyd was convicted of indecent behavior with juveniles, adjudicated a third-felony habitual offender, and sentenced to the mandatory life at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals that sentence as excessive. We affirm.
PROCEDURAL BACKGROUND
After driving a float in a 2013 Mardi Gras parade in Shreveport, Floyd got in the back of his truck with his 12-year old niece, told her she was his "new favorite toy," and began groping her breasts, legs, and buttocks. Another float driver, and his 16-year-old daughter, witnessed this, and the niece reported Floyd's conduct to her mother. Floyd was charged with indecent behavior with juveniles, La. R.S. 14:81, and a jury unanimously found him guilty as charged. This court affirmed his conviction and sentence of 20 years at hard labor without benefits. State v. Floyd , 51,869 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1165.
Meanwhile, the state filed a bill of information charging Floyd as a third-felony habitual offender. The first felony was simple burglary of an inhabited dwelling, to which Floyd pled guilty in March 1997 and received a sentence of two years at hard labor. The second felony was armed robbery, to which he pled guilty in September 1998 and received a sentence of 10 years at hard labor. At a hearing in October 2016, an expert in latent fingerprint analysis testified that the fingerprints on the bills of information in the two prior offenses and in the instant offense, indecent behavior with juveniles, were identical to those of Floyd taken in open court.
The district court adjudicated Floyd a third-felony habitual offender.[1] Reading the pertinent part of La. R.S. 15:529.1 A(3)(b) into the record, the court found that one of Floyd's priors (armed robbery) was a crime of violence, under R.S. 14:2, *41 and the instant offense (indecent behavior with juveniles) was a sex offense, under La. R.S. 15:540, and thus a life sentence without benefits was mandated. The court also recited the sentencing factors of La. C. Cr. P. art. 894.1, noting Floyd's additional convictions for forgery and illegal possession of stolen things and his lack of remorse for his actions with his niece. The court therefore vacated the previously imposed sentence and resentenced Floyd to life at hard labor, without benefit of probation, parole, or suspension of sentence. The court commented that the mandatory sentence was severe, but she had to afford great deference to the legislature's sentencing scheme. The court also found that Floyd had not shown that he was the exceptional, rare defendant for whom downward departure from the mandatory minimum would be justified.
Floyd filed no motion to reconsider sentence. He later sought, and this court granted, an out-of-time appeal.
THE PARTIES' POSITIONS
By one assignment of error, Floyd urges the court erred in imposing an unconstitutionally harsh and excessive sentence. He shows that even a sentence within statutory limits can be reviewed for excessiveness, State v. Sepulvado , 367 So. 2d 762 (La. 1979), and is unconstitutional if it imposes punishment that is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering, State v. Bonanno , 384 So.2d 355 (La. 1980).
Specifically, he argues that under the version of the habitual offender law that became effective November 1, 2017, he could not have received life because his prior conviction for simple burglary would not qualify under R.S. 15:529.1 A(3)(b). Apparently conceding that his case predated the 2017 amendment, he argues that the amendment nevertheless provides a useful metric for gauging the legislature's view of the mandatory life sentence. In support, he cites Justice Crichton's concurrence in State v. Guidry , 2016-1412 (La. 3/15/17), 221 So.3d 815, which opined that the "current jurisprudence subverts the will of the legislature," the "imposition of life sentences on non-violent offenders at a certain point lacks any meaningful social value and may constitute aberrant cruelty," and such sentences are imposed with "abusive frequency." He also cites Chief Justice Johnson's dissent in the same case, which observed that "78% of habitual offender convictions are for non-violent offenses, though some of those offenders may have had prior violent offenses," the habitual offender law "is used to extract a disproportionately harsh punishment for a less serious offense," and urged that "we must abandon all practices which result in condemnation to a life behind bars for anyone other than the most dangerous among us." He submits that if his sentence is affirmed, he will die in jail "because he was convicted and sentenced before the legislature acknowledged, reacted to, and sought to prevent excessive, abusive, and unconstitutional sentences" such as those recognized by Justice Crichton in Guidry . In light of this legal environment, and the fact that the instant offense was nonviolent, he urges that his sentence be reversed and his case remanded for resentencing.
The state responds that the court correctly applied R.S. 15:529.1 A(3)(b) and imposed a legal sentence. It agrees that in "truly rare" cases, the court may deviate downward from the mandatory minimum sentence, but argues that such action cannot be based solely on the nonviolent nature of the current or prior offenses, and, moreover, Floyd offered no evidence whatsoever to support a downward deviation.
*42 The state also argues that the subsequent change in the law is immaterial, as the version of the habitual offender law in effect at the time of the offense governs. State v. Parker , 2003-0924 (La. 4/14/04), 871 So.2d 317. The state urges affirmance.
APPLICABLE LAW
At the time of Floyd's offense, R.S. 15:529.1 A(3)(b) provided the penalty for a third-felony multiple offender: if the third felony is such that upon first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then:
(b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The 2017 amendment removed from this subsection violations of the Controlled Dangerous Substances Law and other crimes punishable by imprisonment for 12 years or more. 2017 La. Acts No. 257, § 1. The same amendment further provided that the change "shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." Id. , § 2. A 2018 amendment further clarified the legislature's intent by adding paragraph 529.1 K(1), which provides that, except for a condition not applicable to this case, "notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." 2018 La. Acts No. 542, § 1. Prior jurisprudence held that the habitual offender law in effect at the time the defendant committed the underlying offense is the version that applies; amendments to the habitual offender law apply only to offenses committed after the effective date of the amendments. State v. Parker , 2003-0924 (La. 4/14/04), 871 So.2d 317 ; State v. Casaday , 51,947 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1057 ; State v. Barker , 2017-0469 (La. App. 4 Cir. 5/30/18), --- So. 3d ----.
The minimum sentences mandated by the habitual offender law are presumed to be constitutional. State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672. The sentencing judge must therefore start with the presumption that a mandatory minimum sentence under the habitual offender law is constitutional. State v. Thomas , 50,898 (La. App. 2 Cir. 11/16/16/), 209 So.3d 234. The legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. State v. Johnson , supra ; State v. Capers , 43,743 (La. App. 2 Cir. 12/3/08), 998 So.2d 885, writ denied , 2009-0148 (La. 10/2/09), 18 So.3d 102.
A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Small , 50,388 (La. App. 2 Cir. 2/24/16), 189 So.3d 1129, writ denied , 2016-0533 (La. 3/13/17), 212 So.3d 1158. Courts have the power to declare a sentence excessive under this standard, but this power should be exercised only if *43 the court finds clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Johnson , supra ; State v. Lindsey , 99-3302 (La. 10/17/00), 770 So.2d 339, cert. denied , 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). Downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant shows that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. State v. Thomas , supra . A defendant cannot rely solely on the nonviolent nature of his crimes to rebut the presumption of constitutionality. State v. Johnson , supra ; State v. Fisher , 50,301 (La. App. 2 Cir. 12/30/15), 185 So.3d 842, writ denied , 2016-0228 (La. 2/3/17), 215 So.3d 687.
DISCUSSION
The premise of Floyd's argument is that he should receive some consideration in light of the 2017 amendment to the habitual offender law. Even though the amendment is expressly prospective only, he contends that it nevertheless shows the legislature's recognition that the prior scheme resulted in excessive and abusive sentences for repeat offenders. This court is sensitive to the reality that Floyd will not benefit from the leniency of the 2017 amendment because his offense occurred before it took effect. However, the legislature specified that the amendment would have "prospective application only," and a subsequent amendment further clarified that courts "shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." In other words, the legislature clearly stated its intent to diminish the penalties for certain habitual offenders, but equally clearly stated its intent not to reopen or relitigate cases that arose before the effective date. The jurisprudence also holds that the version of the habitual offender law in effect at the time of the crime is the version that applies; amended provisions apply only to offenses committed after their effective dates. State v. Parker , supra ; State v. Casaday , supra ; State v. Barker , supra . We therefore cannot adopt Floyd's premise of using the 2017 amendment as a convenient metric to find his sentence excessive.[2]
Floyd also argues that the underlying offense is not a violent offense, and this fact should loom large in gauging the excessiveness of his mandatory life sentence. We agree that indecent behavior with juveniles is not classified as a crime of violence in La. R.S. 14:2 B. However, a defendant cannot rely solely on the nonviolent nature of his crimes to rebut the presumption of constitutionality. State v. Johnson , supra ; State v. Fisher , supra . Instead, he is required to show that he is "exceptional," in that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. State v. Thomas , supra . We are constrained to observe - as did the district court - that Floyd presented no evidence in mitigation of the mandatory sentence, giving the court nothing on which to base a *44 finding that he is exceptional. Despite its reservations about imposing the mandatory life sentence, the district court conscientiously reviewed Floyd's criminal history and found that it did not support a downward deviation. On close review, we detect no abuse of discretion.
We also observe that in State v. Guidry , supra , the Supreme Court held that a defendant is not entitled to have the jury informed that, if convicted of the charged offense, he faced the possibility of the mandatory life sentence as a habitual offender. Chief Justice Johnson and Justice Crichton wrote separate opinions voicing their views that the habitual offender law "serves no worthwhile goal" when used to "extract a disproportionately harsh punishment for a less serious offense" and that imposing life sentences on nonviolent offenders "at a certain point lacks any meaningful social value and may constitute aberrant cruelty." While these expressions of clemency did not sway the whole court, they may well have helped influence the legislature to moderate some aspects of the habitual offender law in 2017. This court, of course, will follow the legislative enactment.
Finally, we consider whether the sentence violates La. Const. art. I, § 20, as disproportionate to the seriousness of the offense or a purposeless infliction of pain and suffering. Evidence introduced at trial showed that in 2008, Floyd had performed acts that would classify as sexual battery, and in 2011, performed other indiscreet acts, both with the same niece who was the victim, in 2013, in the underlying felony of indecent behavior with juveniles. In addition to the predicate offenses of simple burglary of an inhabited dwelling, in 1997, and armed robbery, in 1998, the district court cited Floyd's convictions for forgery and illegal possession of stolen things, and his lack of remorse for his treatment of his niece. In the totality of these circumstances, we cannot say that the mandatory life sentence, though harsh, is disproportionate, a purposeless infliction of pain and suffering, or shocking to the sense of justice. The assignment of error lacks merit.
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920 (2).
CONCLUSION
For the reasons expressed, the conviction, multiple offender adjudication, and sentence are affirmed.
AFFIRMED.

In response to a defense objection that the first felony was "timed out," the district court called a recess, did research, and determined, correctly, that both priors were available for enhancement under R.S. 15:529.1 C, as it then provided: less than 10 years elapsed between the 1997 and 1998 convictions; the 1998 conviction resulted in a 10-year sentence; time spent in a penal institution does not count against the 10-year period of 15:529.1 C; thus, the instant offense, in 2013, would have been within 10 years of his release. State v. Kisack , 2016-0797 (La. 10/18/17), 236 So.3d 1201, cert. denied , --- U.S. ----, 138 S. Ct. 1175, 200 L.Ed.2d 322 (2018). Floyd has not challenged this ruling on appeal.

This court is aware of an unpublished opinion, State v. Purvis , 2017-1013 (La. App. 3 Cir. 4/18/18), 244 So.3d 496, in which a divided Third Circuit applied the amended version of R.S. 15:529.1 to an offense that occurred in September 2015, over two years before the amendment took effect. This court would decline to follow Purvis , in light of the jurisprudence, but we consider it effectively abrogated by the 2018 enactment of R.S. 15:529.1 K(1).