Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,105-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CALVIN L. BROADWAY                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 349,836

Honorable Ramona L. Emanuel, Judge

* * * * *

| | |
|---|---|
| LOUISIANA APPELLATE PROJECT<br>By: Peggy J. Sullivan | Counsel for Appellant |
| CALVIN BROADWAY | Pro Se |
| JAMES E. STEWART, SR.<br>District Attorney | Counsel for Appellee |
| RICHARD S. FEINBERG<br>WILLIAM C. GASKINS<br>VICTORIA T. WASHINGTON<br>Assistant District Attorneys | |

* * * * *

Before WILLIAMS, COX, and McCALLUM, JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, Louisiana. Following a jury trial, the defendant, Calvin Broadway, was convicted of second degree battery in violation of La. R.S. 14:34.1. Broadway was adjudicated a fifth-felony offender and sentenced to life imprisonment at hard labor without benefits. Broadway appeals, requesting that this Court vacate both his conviction and sentence. For the following reasons, Broadway's conviction and sentence are affirmed.

**FACTS**

On July 3, 2017, Broadway was charged by a bill of information with the aggravated battery of Brenda Gilmer, in violation of La. R.S. 14:34; the offense occurred on June 3, 2017. There were multiple amended bills of information filed in this case. The final amended bill was filed March 5, 2018, and included only the charge of aggravated battery. A jury trial was held from April 16th to 18th, 2018, where the following evidence was adduced.

Brenda Gilmer testified that she was on Pickett Street on June 3, 2017, to visit her friend Gloria Washington. Gilmer testified that she was acquainted with someone whose cell phone was stolen. Gilmer testified that earlier that day, she called the stolen phone number on behalf of the acquaintance to see who would answer. Gilmer testified that the person who answered informed her that Broadway stole the phone, and she relayed that information to others. Gilmer testified she was speaking with Washington and another man, when Broadway came down the street toward her. Gilmer testified that Broadway said to her, "Lyin' bitch," and he then "busted me upside the head" and "split my face."

Gilmer testified that she then went into nearby bushes and retrieved a bottle to defend herself. Gilmer testified that she broke the bottle and came back to fight Broadway off. She testified that Broadway was still close to her and continuing to come at her when she brought the broken bottle out of the bushes. Gilmer stated that she was backing away from Broadway and she tripped and fell onto her back. She stated that at that point Broadway straddled her, with his knees on her arms, and beat her in the face. Gilmer testified that at that point in the altercation, she no longer had the bottle. She stated that she could not see because she had blood all over her face. Gilmer testified that she heard Washington yell for someone to get Broadway off of her, because he was going to kill her.

Gilmer testified that she then walked down Fairfield Avenue and passed out. She stated that she took off her shirt during the fight so Broadway would not grab it. She testified that she spent two days in the hospital, and she received staples and stitches as a result of the altercation with Broadway.

Gilmer testified that she grew up with Broadway's family and knew him prior to the altercation. She testified that she did not go to Pickett Street to confront Broadway about the stolen phone. She stated that Broadway punched her with a closed fist. Gilmer testified that she is a diagnosed paranoid schizophrenic, and it is difficult for her to calm down once she gets angry. Gilmer testified that Broadway's actions toward her made her angry. Gilmer affirmed that she had a prior conviction for simple battery.

Corporal James Bass, with the Shreveport Police Department ("SPD"), testified that he was dispatched on June 3, 2017 to 941 Pickett Street, Shreveport, Louisiana, in response to a reported stabbing. Cpl. Bass

2

testified that on the way to the scene he was informed that the victim was walking along Fairfield Avenue toward Louisiana Avenue. Cpl. Bass stated that he encountered the victim, Gilmer, walking on the median between traffic lanes. Cpl. Bass testified that Gilmer was not wearing a shirt and was bleeding heavily from the side of her head around her ear. He stated that Gilmer was "screaming and hollering, kind of hysterical." Cpl. Bass stated that Gilmer was hard to understand and communicate with, and that he, along with other SPD officers and members of the fire department, attempted to calm her down. He stated that Gilmer was placed in an ambulance and transported to the hospital.

A dash cam ("MVS") video from Cpl. Bass's police unit was played for the jury, which showed what Cpl. Bass described about his encounter with Gilmer. Cpl. Bass then attempted to locate the crime scene and, after finding a blood trail on Pickett Street, he found bloody items on the ground. Cpl. Bass took photos of the items, which depicted a blue bandanna next to what appeared to be blood droplets on the sidewalk. The photos also depicted a white cloth with what appeared to be blood on it and a truck with what also appeared to be blood on the driver-side front fender. Cpl. Bass testified that he did not speak to Broadway because he had already been put in an ambulance.

Gloria Washington testified that she witnessed the altercation between Broadway and Gilmer. Washington testified that the physical altercation began when Broadway called Gilmer a "bitch," as Gilmer backed away from Broadway while saying repeatedly, "Leave me alone." Washington testified that Broadway started the fight and that there was blood everywhere. She stated that at one point Gilmer fell, and Broadway was on top of her and

3

they were still fighting. Washington testified that Gilmer did not want to fight and kept saying, "Leave me alone."

SPD Corporal Jeremy Edwards testified that he was dispatched to Pickett Street on June 3, 2017, in response to a stabbing. Cpl. Edwards testified that, upon arriving at Pickett Street, he saw Broadway bleeding heavily from his head. Cpl. Edwards testified that Broadway was holding a glass bottle. The MVS video from Cpl. Edwards' police unit depicts Broadway standing on the side of the road with a white cloth on his shoulder covered in what appears to be blood. On the video, Cpl. Edwards and others can be heard telling Broadway to put something down so he can be assisted with his injuries. Cpl. Edwards testified that he collected the bottle as evidence, and it had what appeared to be blood on it. Cpl. Edwards stated that he did not take a statement from Broadway.

Heaven Gillins testified that she drove onto Pickett Street on June 3, 2017, to find "a commotion." She stated that she saw Broadway being aggressive toward Gilmer and he had a bottle in his hands. Gillins testified that Broadway was still trying to "get at" Gilmer, and Gilmer was repeatedly saying, "Leave me alone." Gillins stated that Gilmer did not appear to want to fight. Gillins testified that Broadway and Gilmer were both "pretty bloody," and Gilmer had a big knot on her head. Gillins stated that the neighbors got the two separated, and Gilmer had taken her shirt off before Gillins arrived.

The State rested after Gillins testified. Broadway elected not to testify in his own defense, and the defense rested without presenting evidence. The jury returned with a responsive verdict, finding Broadway guilty of second degree battery. Broadway did not file any post-trial motions. On June 20,

4

2018, the State filed a habitual offender bill, charging Broadway as a fifth-felony offender. Broadway's predicate offenses were:

1. Simple Burglary: Broadway pled guilty on April 17, 1985, and was sentenced to three years.

2. Simple Burglary: Broadway pled guilty on August 3, 1988, and was sentenced to three years.

3. First Degree Robbery: Broadway pled guilty on March 26, 1991, and was sentenced to four years.

4. Attempted Simple Robbery: Broadway was found guilty on August 24, 1995, and was sentenced to 50 years (as a fourth-felony offender).

On October 17, 2018, Broadway was adjudicated a fifth-felony offender, and on February 20, 2019, he was sentenced to life imprisonment at hard labor without benefits. Broadway was given credit for time served, and the trial judge stated his sentence was to run consecutively to any other sentence. Broadway was advised of his appeal and post-conviction relief time limits. Broadway objected to his sentence, but he did not file a written motion to reconsider sentence. Broadway now appeals.

**DISCUSSION**

*Insufficient Evidence*

Broadway argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was guilty of second degree battery. Broadway argues that he acted in self-defense when Gilmer attacked him with a broken bottle. He therefore asserts that he lacked the specific intent required to commit second degree battery.

The State argues Broadway was angry with Gilmer over the accusation of his theft of the cell phone, and he attacked Gilmer, who was retreating from him. The State asserts that Broadway was the aggressor and

5

that he struck Gilmer with a closed fist, with the specific intent to hurt her. The State asserts that Gilmer used the glass bottle to defend herself while continuing to retreat from Broadway. The State argues that when Gilmer tripped and fell, Broadway straddled her and beat her with the bottle. The State points out that Broadway had the bottle neck in his hand when SPD arrived.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242, *writ not cons.*, 18-0296 (La. 4/16/18), 239 So. 3d 830. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

A reviewing court affords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Steines, supra*. The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, *writ denied*, 15-2291 (La. 4/4/16), 190 So. 3d 1203. In the absence of internal

6

contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Cooley*, 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, *writ denied*, 18-1160 (La. 3/6/19), 266 So. 3d 899.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Cooley, supra.* Such testimony alone is sufficient even where the State does not introduce medical, scientific, or physical evidence. *State v. Steines, supra.* The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed. 2d 62 (2000); *State v. Cooley, supra.*

Second degree battery is a battery when the offender intentionally inflicts serious bodily injury. La. R.S. 14:34.1. Battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. Second degree battery is a specific intent crime and therefore, the evidence must show that the defendant intended to inflict serious bodily injury. *State v. Fuller*, 414 So. 2d 306 (La. 1982); *State v. Jackson,* 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the

offense and the conduct of the defendant. *State v. Jackson, supra.* The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of *Jackson v. Virginia*, *supra*; *State v. Jackson, supra.*

In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. *State v. Jackson*, *supra*.

This Court has repeatedly held that the burden of proving self-defense in a non-homicide case rests with the defendant to prove the defense by a preponderance of the evidence. *See State v. Jackson, supra*; *State v. Jones*, 49,396 (La. App. 2 Cir. 11/19/14), 152 So. 3d 235, *writ denied*, 14-2631 (La. 9/25/15), 178 So. 3d 565; *State v. Cheatham*, 38,413 (La. App. 2 Cir. 6/23/04), 877 So. 2d 164, *writ denied*, 04-2224 (La. 6/24/05), 904 So. 2d 717.

Broadway, for the first time on appeal, argues he acted in self-defense in his altercation with Gilmer. However, the evidence presented at trial does not support that claim. Gilmer, Washington, and Gillins each testified that Broadway was the aggressor and struck Gilmer with a closed fist, starting the fight between them. Washington and Gillins both testified that Gilmer backed away from Broadway and repeatedly said to him, "Leave me alone." Gilmer attempted to defend herself with a broken bottle, and after she tripped and fell, Broadway pinned her down and continued to beat her. Gilmer suffered a serious head wound which required stitches, staples, and two days in the hospital. Broadway's actions satisfy the elements required for a conviction of second degree battery, and the jury was able to weigh the

8

evidence presented and come to its own conclusions about Broadway's guilt. This assignment of error lacks merit.

*Excessive Sentence*

Broadway argues the sentence imposed is unconstitutionally harsh and excessive given the facts and circumstances of this case. Broadway also argues that his punishment as a habitual offender makes no measurable contribution to acceptable goals of punishment, and that his sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly disproportionate to the severity of the crime. The State argues that Broadway was previously found to be a fourth-felony habitual offender following his conviction for attempted simple robbery and was first sentenced to life imprisonment. The State points out that his sentence was later amended to 50 years at hard labor, because Broadway had not committed a crime of violence. The State argues that Broadway was released early with 28 years left on his sentence. The State argues that Broadway's instant offense and two of his predicate offenses, simple robbery and attempted first degree robbery, are crimes of violence. The State also points out that Broadway's two other predicate offenses of two counts of simple burglary each carried up to a 12-year sentence when committed. Therefore, the State argues, Broadway's life sentence was mandatory under La. R.S. 15:529.1.

Ordinarily, appellate review of sentences for excessiveness utilizes a two-step process, examining the aggravating and mitigating factors provided in La. C. Cr. P. art. 894.1, and then the court examines whether the sentence is constitutionally excessive. However, when no motion to reconsider sentence is filed or where the motion to reconsider sentence raised only a

9

claim that the sentence imposed was constitutionally excessive, a defendant is relegated to review of the sentence on that ground alone. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131, *writ not cons.*, 18-0017 (La. 3/9/18), 237 So. 3d 1190. Here, Broadway did not file a motion to reconsider sentence, but did object to the sentence on the record; therefore, a constitutional excessiveness review is all that is required.

A sentence violates La. Const. art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. *State v. Garner*, 52,047 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1152, *writ denied*, 18-1290 (La. 2/25/19), 266 So. 3d 288. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. *Id*.

The minimum sentences mandated by the Habitual Offender Law are presumed to be constitutional. *State v. Johnson*, 97-1906 (La. 03/04/98), 709 So. 2d 672; s*ee State v. Roth*, 52,359 (La. App. 2 Cir. 11/14/18), 260 So. 3d 1230, *writ denied*, 18-2059 (La. 6/17/19), 273 So. 3d 1210. The legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. *State v. Johnson, supra; State v. Floyd,* 52,183 (La. App. 2 Cir. 8/15/18), 254 So. 3d 38. Courts have the power to declare a sentence excessive under La. Const. art. I, § 20 although it falls within the statutory limits provided by the legislature; however, this power should be exercised only if the court finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. *State v. Johnson*, *supra*; *State v. Floyd, supra.*

The Habitual Offender Law in effect at the time of Broadway's offense stated, in pertinent part:

> Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
>
> ….
>
> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> > ….
>
> > (b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

La. R.S. 15:529.1(A).

Broadway fails to articulate any reason why his circumstances justify a departure from the mandatory life sentence as a fifth-felony habitual offender as required by La. R.S. 15:529.1.  His instant conviction for second degree battery and his prior convictions for simple robbery and attempted first degree robbery are crimes of violence.  Furthermore, his two convictions for simple burglary both carry possible sentences of up to 12 years.  Those facts require that he be sentenced to mandatory life.  His criminal record demonstrates a likelihood of recidivism and a likelihood of

continuing to commit violent criminal offenses. The mandatory life sentence does not shock the sense of justice. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, Broadway's conviction and sentence are affirmed.

**AFFIRMED.**