Judgment rendered November 18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,534-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CALVIN HORTON                               Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 357463

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas L. Harville

JAMES E, STEWART, SR.                   Counsel for Appellee
District Attorney

ALEXANDRA PORUBSKY
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

Calvin Horton was convicted in the First Judicial District Court, Parish of Caddo, with the Honorable John D. Mosely, Jr., presiding, of simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2, and adjudicated a second-felony habitual offender. Horton was sentenced to 24 years' imprisonment at hard labor, and he now appeals the length and conditions of the sentence imposed. For the following reasons, Horton's sentence is affirmed.

**FACTS**

Horton had a 2015 conviction of simple burglary of an inhabited dwelling at the time of the commission of the crime giving rise to this matter. He was subsequently charged by bill of information for simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2, and proceeded to a jury trial, which commenced on April 8, 2019. He was found guilty by a unanimous jury.

At the trial, Joshua Burson, who resides at 3001 Burson Drive in Shreveport, Louisiana, testified he was away from his home on the morning of September 11, 2017, when he was notified that officers with the Shreveport Police Department had responded to a burglary call at his home.

Phyllis Daulong, who resided across the street from the Burson house, testified that she heard a banging sound and observed a man kicking down the door of Burson's house, then entering the house. She also observed another man under the carport of the Burson house. Daulong instructed her daughter, Marcella Ogunmayin, to call the police. Ogunmayin testified that she also saw two African American men enter the Burson house and that officers arrived within ten minutes of her call.

James Carpenter, who resided two houses away from the Burson house, testified that he observed a car drive down the street very slowly and then stop in front of the Burson house. Two individuals exited the vehicle and walked toward the Burson house. Concerned for his safety and that of his neighbors, Carpenter testified that he retrieved his pistol and walked across the street, where he observed that the front door of the Burson house was damaged and ajar. He was crossing the street to the Burson house when officers arrived on the scene. He stated that he returned to his house and then heard a gunshot. He went to his backyard to check his property and located one of the individuals that he saw near the Burson house. He testified that, at gunpoint, he instructed the man to lie on the ground while he called for help. At trial, he identified that man as Horton.

Corporal Henry Burak, with the Shreveport Police Department, testified that he investigated the incident at the Burson house on September 11, 2017. Upon arrival at the house, he observed someone running through the backyard, away from the residence. He identified Horton as the individual he saw. He testified that he did not pursue Horton, but secured the rear of the house. He noted an open window in the back of the house near where Horton fled.

Corporal Clarence Wray, Jr., also of the Shreveport Police Department, testified that he heard someone calling for help as he approached the Burson house. He located Carpenter and an African American man in Carpenter's backyard. Carpenter had a gun pointed at the man, who was then handcuffed and taken into custody by the officers and transported to the police station.

When Burson arrived at his house, he found that several rooms appeared to have been ransacked, but nothing had been taken. He noted that his power tools were on the kitchen table, "like they were ready to be just taken," instead of in the usual tool bags, indicating the intended thief had been interrupted. He also noted that a window was broken in his daughter's room at the back of the residence, and a sock was found outside of that window. Burson testified that he did not give Horton or his accomplice permission to enter his home.

Corporal Betsy Huey, of the Shreveport Police Department's Crime Scene Unit, testified that she processed the scene at the Burson house. She identified photographs of the house, including photographs of the damaged front door. She testified that the interior of the house appeared to have been ransacked.

Dr. Jessica Esparza, who was accepted as an expert witness in forensic DNA analysis, testified that DNA obtained from a sock found beneath the broken window at the Burson house matched reference samples obtained from Horton. Dr. Esparza is employed as the DNA technical leader at the North Louisiana Criminalistics Laboratory, where she has worked for over ten years. She testified it is her responsibility to ensure the scientific integrity of the section, train new analysts, and perform casework. She earned her Bachelor's degree in biochemistry from Rice University in Houston ,Texas, and holds a Ph.D. in molecular genetics and genomics from Washington University in St. Louis. She is a member of the American Academy of Forensic Science and has been qualified as an expert witness 33 times in cases in 14 different parishes and two federal jurisdictions.

On April 10, 2019, a unanimous jury found Horton guilty of simple burglary of an inhabited dwelling. Horton's motions for new trial and post-verdict judgment of acquittal were denied by the district court.

On July 18, 2019, the state filed a second-felony habitual offender bill against Horton based on his prior conviction by guilty plea of simple burglary of an inhabited dwelling in 2015, also in the First Judicial District Court. On September 16, 2019, Horton was adjudicated a second-felony habitual offender and subsequently sentenced to 24 years' imprisonment at hard labor. A motion to reconsider sentence was denied by the district court. This appeal followed.

## DISCUSSION

**Assignment of Error: The Trial Court erred by imposing an unconstitutionally harsh and excessive sentence on Calvin Horton, the statutory maximum sentence of 24 years of hard labor without the benefit of probation, parole, or suspension of sentence, based on the commission of two non-violent crimes.**

On review, Horton argues that his sentence is grossly disproportionate when weighed against the harm done to society and that 24 years' imprisonment for two nonviolent offenses shocks the sense of justice. He notes that the trial court imposed the maximum sentence without ordering a presentence investigation report and provided little explanation for the imposition of the maximum sentence. He argues that his sentence was based upon the commission of two nonviolent offenses and that his criminal history includes a number of dismissed charges and a number of charges for which no disposition was noted. Citing Justice Crichton's concurrence in *State v. Guidry*, 16-1412 (La. 3/15/17), 221 So. 3d 815, He argues that his sentence constitutes a gross misuse of the habitual offender law in a way that violates constitutional prerogatives. He asserts that his

4

sentence makes no measurable contribution to the acceptable goal of punishment and does nothing more than purposefully impose pain and suffering.

In response, the state argues that the trial court properly considered all relevant factors prior to sentencing, including Horton's criminal history and lack of remorse. It notes that the daytime burglary establishes the boldness of Horton and his codefendant and that this burglary was only one of a series of armed burglaries perpetrated by the two men. It further argues that although this offense is not a crime of violence (despite two witnesses hearing a gunshot), Horton's criminal history shows a propensity for violence. Specifically, it notes that since 2008, Horton has been arrested for illegal possession of stolen things, illegal use of weapons, illegal possession of a firearm by a juvenile, walking in roadway, domestic abuse battery, aggravated battery, possession of a firearm by a convicted felon, multiple charges of simple burglary of an inhabited dwelling, theft, and cruelty to animals, both simple and aggravated. It also notes that Horton had his probation revoked twice previously and was on parole at the time of this arrest. Further, it specifically notes that several of the burglaries attributed to Horton and his codefendant include firearms fitted with suppressors and the killing of family pets.

Appellate courts apply a two-pronged test when reviewing a sentence for excessiveness: (1) whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and (2) whether the sentence is constitutionally excessive. *State v. Gardner*, 46,688 (La. App. 2 Cir. 11/2/11), 77 So. 3d 1052.

5

This Court must first determine whether the record shows that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. Articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, rather than rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*.

In the present matter, the trial court considered factors relevant to sentencing prior to sentencing Horton to the maximum sentence of 24 years' imprisonment at hard labor, as a second-felony habitual offender. The sentencing judge specifically noted he was basing his decision on the testimony and evidence in the record. The trial court stated that Horton had a significant criminal history and had failed to show any remorse for this offense. It further noted the heinous nature of this offense. As to this prong of the analysis of the appropriateness of the sentence, this Court finds that the trial court adequately considered the guidelines set forth in La. C. Cr. P. art. 894.1.

Next, this Court must determine whether the sentence is constitutionally excessive. Even when it falls within statutory guidelines, a sentence can be constitutionally excessive if: (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in

6

light of the harm done to society, it shocks the sense of justice, or (2) it serves no purpose other than to needlessly inflict pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. DeBerry*, *supra*.

The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Diaz*, 46,750 (La. App. 2 Cir. 12/14/11), 81 So. 3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Williams, supra*; *State v. Free*, 46,894 (La. App. 2 Cir. 1/25/12), 86 So. 3d 29.

La. R.S. 14:62.2(B) provides that "[w]hoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year nor more than twelve years." The sentence enhancement arises from La. R.S. 15:529.1, which provides for the sentencing of a **second**-felony habitual offender, in pertinent part, as follows:

> A. Any person who, after having been convicted within this state of a felony, or who after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
>
> > (1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more

7

than twice the longest term prescribed for a first conviction.

The Louisiana Supreme Court has recently addressed the constitutionality of maximum sentences imposed on defendants via the habitual offender law. *State v. Kennon*, 2019-00998 (La. 09/09/20), 2020 WL 5405710. The *Kennon* court vacated the defendant's 60-year sentence for the sale of $350 worth of cocaine, the maximum sentence authorized as a second time felony offender. *Id.* The court found that this sentence was constitutionally excessive because the defendant had never been convicted of a crime of violence and his nonviolent crimes had been sporadic. The court noted that, considering the age of the defendant, the 60-year sentence was effectively a life sentence. The court upheld the defendant's earlier unenhanced sentences of 35 years at hard labor, to run consecutively. *Id.*

Unlike the defendant in *Kennon*, Horton's long criminal history indicates the undue risk that he will commit another crime. Horton's conduct certainly threatened harm to those around him, as he burgled inhabited homes in the middle of the day. Further, Horton is 30 years old and the imposition of the 24-year sentence is not an effective life sentence.

Based on the facts of this case and the likelihood that the crime would occur again, the sentence imposed does not shock the sense of justice, nor is it grossly disproportionate to the offense for which Horton was convicted. This Court finds that the trial court appropriately considered all factors in the second prong of sentencing Horton and that the imposition of 24 years' hard labor on Horton as a second felony habitual offender is not constitutionally excessive. The trial court was within its discretion in imposing the sentence, and this Court cannot find that its purpose was to needlessly inflict pain and

8

suffering.  For the foregoing reasons, this assignment of error is without merit.

## CONCLUSION

For the aforementioned reasons, Horton's sentence is **AFFIRMED**.